## MOLLIE BREIDENSTEIN v. BERTRAM et al., Appellants.

### Division Two, July 3, 1906.

1. **PRETERMITTED HEIR: Partition.** A pretermitted heir, not provided for in the will, may assert his rights given by the statute to share in the estate, not only by a bill in equity for contribution, but, under proper circumstances, by a suit in partition or in ejectment.

2. ———: ———: **Belated Objection.** Where defendants in no way challenged the right of the pretermitted heir to assert by suit in partition her right as an heir omitted from the will

to a share in the estate, until after the court had submitted to the jury the main issue of whether such pretermitted heir was a legitimate child of the testator and had adopted the finding of the jury that she was, the challenge in the motion for a new trial that partition was not the remedy came too late.

3. ———: **Paternity: Recognition: Proof.** The statute (sec. 2917, R. S. 1899) declaring that "if a man, having by a woman a child, shall afterwards intermarry with her, and shall recognize such child as his," it shall thereby be legitimated, in effect makes the fact that a man recognizes a child, born out of wedlock, as his offspring, after he has married the mother, persuasive, if not conclusive, evidence that he is the father of such child.

Appeal from Scotland Circuit Court.—*Hon. E. R. McKee,* Judge.

AFFIRMED.

*Berkheimer & Dawson* and *Mudd & Pettingill* for appellants.

(1) As to right of partition: Hutson v. Hutson, 139 Mo. 229; Hays v. McReynolds, 144 Mo. 348; Estes v. Nell, 140 Mo. 650; Womack v. Whitmore, 58 Mo. 448; Shaw v. Gregoire, 41 Mo. 407. In order to defeat a partition there must be an ouster or facts showing an ouster. It is not necessary, however, that such adverse possession should have continued the statutory period of ten years. Hutson v. Hutson, 139 Mo. 236. In this case the pleadings as well as the evidence show that the issue was, is the plaintiff a grandchild of the testator? The plaintiff affirms and defendants deny. Defendants were holding adversely to plaintiff, claiming that she was not a co-tenant, or grandchild of the testator. She knew this, that is, that they were all holding against her, disputing the relationship of plaintiff to the testator; consequently as to her, this was an ouster and disseizin. It is only in proceedings purely equitable or certain proceedings under the statute that the court is authorized to submit special issues of fact to a jury.

Grand Lodge v. Elsner, 26 Mo. App. 108; Ellis v. Kreutzinger, 31 Mo. 432; Weil v. Kume, 49 Mo. 158; Bronson v. Wanzer, 86 Mo. 408; Long v. Long, 141 Mo. 352. There were no equitable questions arising under the facts of this case. Plaintiff did not claim to recover by virtue of any equitable title or right but simply asks the court to partition to her the lands belonging to her as the child and heir of the decedent. The case was purely for the recovery of property, to-wit, her share of the estate of her grandfather, and in such case, and if there is any other remedy than under the statute of wills, it is a suit in equity for distribution or ejectment. R. S. 1899, sec. 691; Ellis v. Kreutzinger, 31 Mo. 432; Moline Plow Co. v. Hartman, 84 Mo. 610; R. S. 1899, sec. 4386; Benoist v. Thomas, 121 Mo. 660; Gunn v. Thurston, 130 Mo. 339; Barkhoefer v. Barkhoefer, 93 Mo. App. 373. (2) Plaintiff's evidence did not prove, or show that her mother was a daughter of the testator. All of her witnesses did not in their evidence come within the rule of testimony of pedigree or relationship. None of them ever heard the testator say that she was his child, not even her father (Feltman). While defendant's evidence conclusively shows that he did not regard her as his child, nothing could be stronger than the evidence of witness Lotz. At the time when he was writing the testator's family record, by request of the testator, and he gave him all the names of his children, he did not mention plaintiff's mother, nor at any other time when giving the number of his children did he ever claim that plaintiff's mother was his child. Testator's brother as witness explains that he did not like to marry his first wife because she had a child by her side, but he loved her and brought her to America with him and married her at St. Louis, and of course as an honorable gentleman treated the child well. But this "good treatment of the child" does not make her his child. As to proof of pedigree

and relationship: 1 Greenleaf on Evidence (5 Ed.), secs. 103, 104. The hearsay evidence admissible in cases of pedigree is limited to those connected with the family, who are supposed to have known the relationship existing. Stein v. Bowen, 38 U. S. 209; Greenwood v. Spiller, 3 Ill. (2 Scam.) 502; Craufurd v. Blackburn, 17 Md. 49; Jackson v. Jackson, 80 Md. 176; Eastman v. Martin, 19 N. H. 152; Inhabitants v. Fowler, 54 N. H. 197; Chapman v. Chapman, 2 Conn. 347; Nunn v. Mayes, 9 Tex. Civ. App. 366; Carter v. Montgomery, 2 Tenn. Ch. 216; Copes v. Pearce, 7 Gill. 247; Birney v. Hann, 10 Ky. (3 A. K. Marsh) 119; DeHaven v. DeHaven, 77 Ind. 236; Harland v. Eastman, 107 Ill. 535; Froser v. Jeneson, 42 Mich. 206; Byers v. Wallace, 87 Tex. 503; Stump v. Osterhoge, 111 Ill. 82; Haddock v. Railroad, 85 Mass. 298; Dawson v. Maylall, 45 Minn. 408; Pearson v. Pearson, 46 Cal. 609; Derby v. Salem, 30 Vt. 722.

*Smoot, Boyd & Smoot* for respondent.

(1) Recognition and marriage with the mother is conclusive evidence of paternity. Adger v. Ackerman, 115 Fed. 124. Our statute was taken from the Virginia statute of 1785. Gates v. Seibert, 157 Mo. 271. There it was borrowed from the civil law by Mr. Jefferson, who prepared the Virginia statute. Davis v. Rowe, 6 Rand. 365; Ives v. McNichols, 59 Ohio St. 514. In the civil law it was known as *legitimatio per nominationem filii,* or legitimation by recognition. Gaines v. Hennen, 24 How. 553; see note to Stevenson's Heirs v. Sullivan, as reported in 5 L. Ed. 84. The maxim *pater est quem nuptiae demonstrant* was applied by the civil law to children born after as well as before marriage. The mother is always known, but the father is not. When the father marries the mother and recognizes the child, he makes himself known. The courts have uniformly given so much weight to the declarations of parents,

especially of the father, as to the paternity of the child as to make the same practically conclusive. Patterson v. Gaines, 6 How. 550; Gaines v. New Orleans, 6 Wall. 642; Seattle v. Hillenburg, 85 Va. 250; Stegall v. Stegall, 2 Brock. 256; Methudy v. Bohn, 160 Ill. 368. Marriage under such circumstances as that shown by the facts in this case is a strong circumstance, almost equivalent to acknowledgment of paternity. State v. Romaine, 58 Iowa 48; Rhym v. Hoffman, 6 Jones Eq. 335; Rex v. Luff, 8 East 193; State v. Hermann, 13 Iredell 503; Best, Ev., 349; 1 Phil. Ev., 463; 3 Rice, Ev., 857. Recognition consists in the performance of parental duties, care for education, introduction into the household, recognition in social circle, marriage, treatment as a father would treat his child, bearing his name, acknowledgment in his family, etc. Johnson v. Johnson's Admr., 30 Mo. 90. (2) This recognition gives the child the same status as that of a child born in wedlock. Gates v. Seibert, 157 Mo. 254; Pratt v. Pratt, 5 Mo. App. 539. (3) Defendants are estopped to urge in this court a different theory from that on which the case was tried in the lower court. Bowlin v. Creel, 63 Mo. App. 229; Beck v. Wisely, 63 Mo. App. 239; Fell v. Mining Co., 23 Mo. App. 216; Minton v. Steele, 125 Mo. 181; Jennings v. Dunham, 60 Mo. App. 634; Scott v. Nevada, 56 Mo. App. 189; Harper v. Morse, 114 Mo. 317; Querbach v. Arnold, 55 Mo. App. 286.

FOX, J.—This cause is in this court by appeal on the part of the defendants from a decree and judgment in partition of the circuit court of Scotland county, Missouri, in favor of the plaintiff. The petition is in the usual and ordinary form, alleging that on the — day of November, 1902, Conrad Bertram died seized of certain land in Scotland county, Missouri, therein described; that he left surviving him and as his sole heirs at law this plaintiff and the defendants herein; that Elizabeth Bertram is his widow; that three of

the defendants are minors; that Conrad Bertram, prior to his death, made and executed his last will and testament, and as to all of said defendants died testate, but as to plaintiff died intestate; that by the terms and provisions of his will he gave all of his lands to his wife, Elizabeth Conrad, for her life, and gave legacies of $800 each, when they became of age, or as soon thereafter as convenient, to Adam E. Bertram, Louis E. Bertram, Burley E. Bertram, Irvin A. Bertram and Estella L. Bertram, provided he did not give the same during his lifetime, and if so paid by him in his lifetime it should become a charge against them; that at the death of his wife he gave to William Bertram, Henry Bertram and Fred C. Bertram the sum of $100 each, and the remainder of his property at the death of his wife was to go to Jesse A. Bertram, Mary E. Lips, Ben C. Bertram, Adam E. Bertram, Louis E. Bertram, Burley E. Bertram, Irvin A. Bertram and Estella L. Bertram in equal parts. That said will was executed and signed by said Conrad Bertram in June, 1899, and afterwards duly probated in Scotland county, Missouri; that in said will Conrad Bertram wholly failed to mention this plaintiff or to make any provision for her, she at the time of his death being his grandchild and the only child of his oldest daughter. That Conrad Bertram has given by way of advancements to William Bertram, Henry Bertram, Fred C. Bertram, Jesse Bertram, Ben C. Bertram, Mary E. Lips, Adam E. Bertram and Louis E. Bertram each the sum of $800, with which they should be charged; that plaintiff is entitled to a one-twelfth interest in all of said lands subject to the widow's rights, and is entitled also to an additional interest that would come to her by reason of the advancements so made to the defendants; that the personal property of said Conrad Bertram is abundantly able to pay all debts owing by said deceased and that said lands are subject to partition. Wherefore she prays that the several interests

of the parties be ascertained; that the parties therein alleged be charged with the advancements; that it be put into hotchpot and that they be charged with the same; that the lands be partioned or at least that plaintiff's interest be set off and assigned to her, and for general relief. This petition was filed on December 19, 1902.

On February 2, 1903, the adult defendants filed an answer admitting the death of Conrad Bertram; admitting he died testate and that he was at the time of his death the owner of the lands described in the petition; that defendants are his legatees and devisees, but deny that the plaintiff was the granddaughter of Conrad Bertram, deceased, or that she was a relative of said deceased. On the same date the minor defendant filed an answer denying all the allegations of the petition.

On the 4th day of August, 1903, the cause was tried before Hon. E. R. McKee, who called to his assistance a jury to pass on the question of fact as to the heirship, which at that stage of the proceeding appeared to be the only question in issue.

The facts as developed upon the trial of this cause were substantially as follows: That in the year 1853 Conrad Bertram, in company with his father, two brothers, Henry and Fred, both younger than himself, Dora Echlebe (the woman whom he afterwards married) and a lady, who was a cousin of theirs, came to this country from Germany, landing at New Orleans. At the time Dora Echlebe had with her a child about two or three years of age, called Dena or Tena, the mother of this plaintiff. The cousin remained at New Orleans and has never been heard from since their arrival; the balance of the party pushed on immediately for St. Louis, where Conrad Bertram followed his trade as a butcher for about a year. Immediately upon their arrival at St. Louis and in October, 1853, Conrad Bertram and Dora Echlebe were married. The

following year the entire party went to Lee county, Iowa, near Keokuk, and took up farming as their occupation. In 1857 Conrad and his family moved to Scotland county, Missouri, where he purchased a farm near Etna, which is the land described in the petition for partition. In Germany Conrad Bertram was what is known as a traveling butcher, or a butcher's apprentice. It was his duty to travel from village to village, carrying the meat on his back. During his travels he became acquainted with Dora Echlebe, who lived in a neighboring village, some "two or three hours"—three to six miles—distant from his home. It seems that he and Dora Echlebe were engaged to be married before they came to this country, but there was some legal impediment. Of the marriage four children were born, three boys and one daughter, William, Henry, Fred, and Amanda, the last having died; the other three are living and duly mentioned in the will. The girl Dena grew to womanhood in the family and was known as Dena Bertram, and was usually so called by her friends and acquaintances, and was never known by any other name. During the years of their married life Conrad Bertram recognized this child Dena as his child, called her his daughter and she called him father; on January 14, 1867, he gave her in marriage to Henry Feltman as his daughter—his Dena; he gave a wedding feast in her honor, to which about all the Germans in that country were invited; the marriage was entered of record on the church register as Dena Bertram; of this marriage Mollie Feltman, now Mollie Breidenstein, the plaintiff and the alleged pretermitted heir, was born. In April, 1867, the wife, Dora Bertram, nee Echlebe, died, and in July of the same year Conrad Bertram married Elizabeth Gerrick, and of this marriage ten children were born, eight boys and two girls; two boys died in infancy and the survivors are legatees under his will.

The record discloses that the question of heirship of the plaintiff, which seemed to be the only issue in controversy between the parties to this proceeding, was sharply contested before the jury. We have read in detail all of the testimony both for the plaintiff and the defendants relating to this issue. The record discloses that this question is no exception to the ordinary rule where such issues are presented; the testimony is very much in conflict. We shall not undertake to reproduce in detail all of the testimony applicable to such question; however, as the finding of the jury and the adoption of such finding by the court is assailed by appellants, it is essential that we make such references to the testimony as will at least indicate the basis upon which the finding of the jury and the action of the court in adopting such finding was predicated.

On the part of the plaintiff the testimony tended to show the following facts:

Henry Feltman testified that he was married to the mother of the plaintiff in the name of Dena Bertram; that he courted her a year, going across the field to where she lived every Sunday—sometimes oftener; that he never heard Conrad Bertram say whether she was his daughter or not; that during their courtship Conrad treated her the same as the other children; that she went by the name of Bertram and that Conrad called her his Dena. That he asked him, "Conrad, have you any objections to me and your Dena getting married?" To which Conrad replied, "No, Henry, you can get my Dena." That they were married on January 14, 1867, she marrying under the name of Dena Bertram; that his wife's mother died the same year and that he and his wife, at the request of Conrad Bertram, went to his house and kept house until Conrad remarried. Witness stated that his wife died about four years after their marriage. He further stated that he and Conrad Bertram had some trouble over some land; that witness told him in the presence of Major Cramer,

"In the first place I am crippled; in the second place, I am your son-in-law." He, Conrad, wanted to make witness pay more for the land than the price at which Conrad bid it in. Conrad replied: "Yes, Henry, that's all so; at the same time take character from a man."

The record of the church register of the marriage of Henry Feltman and Dena Bertram shows that they were married on the 14th of January, 1867, at Etna, Missouri, by John Breitenstein, a minister of the Gospel. This certificate was filed for record January 25, 1867.

Neighbors and acquaintances who had known the girl in question from her school life up to the time of her death, testified that she was always known as Dena Bertram, daughter of Conrad Bertram; that she was recognized as his child and that this reputation continued up to the time this suit was brought; that she was introduced as Dena Bertram; that Conrad Bertram treated her as his child and called her his child or his daughter, and that she called him father or papa.

Fred, William and Henry Bertram testified that they were children of Conrad Bertram; that their mother's maiden name was Dora Echlebe, and that from conversations with their father they learned that he and their mother were acquainted in Germany, but owing to the laws of that country they could not be married there, and that they were married immediately on reaching America; that it was the understanding of the family that Dena was their sister; their father's child; that their father called her Dena or Tena or his daughter, and that she called him papa like the rest of the children and that they always recognized her as their sister and that she was treated like the rest of the children.

On the part of the defendants the testimony tended to show that Conrad Bertram did not recognize plain-

198 Sup—22

tiff's mother as his daughter. His second wife, Elizabeth Bertram, now his widow, testified that she had heard her husband say in the presence of the children that the plaintiff's mother was not his daughter; that she was his stepdaughter; that she had heard him make this statement frequently. Another witness was Mr. Lotz, who was a minister of the Gospel. His testimony was in relation to the request of Conrad Bertram to write him, Bertram, a family record, and that witness in.compliance with such request wrote the record; that he gave the date of his birth and when he came to this country, and the date of his marriage to both his wives, and the number of children born to them, but did not include plaintiff's mother.

Numerous other witnesses testified on the part of the defendants, but we deem it unnecessary to detail their testimony. It is sufficient to say of it that it tended to show that Conrad Bertram did not regard or recognize plaintiff's mother as his daughter.

At the close of the evidence the court instructed the jury and the issue of fact presented to them: "Was Conrad Bertram the father of Mrs. Dena Feltman? Was she his child begotten by him?" was submitted to the jury, and they found in favor of the plaintiff, that is, that her mother was the daughter and child of Conrad Bertram.

On August 6, 1903, the defendants filed a motion for a new trial, assigning as reasons for such motion that the verdict was contrary to the law and the evidence; that the court erred in submiting the issues to a jury; that the court erred in excluding certain evidence offered by defendants; that the court erred in admitting certain evidence presented by plaintiff; that the court erred in submitting certain instructions asked by plaintiff and in refusing certain instructions asked by the defendants. Up to this time no other issues were raised and this motion was by the court overruled on August 7, 1903.

On August 12, 1903, some days after the finding of the jury, which was adopted by the court after the overruling of the motion for a new trial, defendants filed amended answers. The only substantial difference between these answers and the ones on file at the time of the trial of the issues by the jury was that it was specially alleged that Elizabeth Bertram, the widow of Conrad Bertram, was in the exclusive and adverse possession of the lands sought to be partitioned, and that the other defendants asserted and claimed a remainder therein after the death of Elizabeth Bertram, against and adverse to the plaintiff, and that plaintiff is in possession of no part of such lands and has no right of possession therein.

The record before us does not disclose any further trial of this cause after the filing of the amended answers, nor does it disclose any demand by the appellants for a further trial. The abstract of record as furnished by appellants fails to disclose any testimony upon any issue presented by the amended answers. The vital and important question in this cause seems to have been the issue of the heirship of the plaintiff; therefore, appellants in order to comply with the rules of this court should have set forth, either in narrative form or by questions and answers, all of the testimony of the witnesses. It is apparent that this was not done. However, the only evidence preserved as contained in the abstract, relates to the issue of heirship. There is no testimony recited in respect to the nature and character of the exclusive and adverse possession of the defendants, which was specially set up in the amended answers.

On the 21st day of August the court entered of record its finding and decree in this cause, which was as follows:

"Now at this day this cause coming on for trial upon the issues as to whether the plaintiff was the grandchild and legitimate heir of Conrad Bertram, de-

ceased, and as to whether her mother was the daughter of said Conrad Bertram, and come the jury herein impaneled and charged, and after hearing all the evidence and arguments of counsel, return into the court their verdict heretofore recorded upon this issue, finding that plaintiff was the granddaughter of Conrad Bertram, and that her mother was his daughter, and the court further finds, adopting said verdict and finding, that the plaintiff was and is the granddaughter of said Conrad Bertram, and the court further finds that said Conrad Bertram died intestate as to said plaintiff, having failed to mention or provide for her in his last will; that he died testate as to all the defendants, having made a will; he further finds that he died seized of the lands mentioned in plaintiff's petition, to-wit: The north half of northeast quarter of section 1, township 64, range 10 west; the southeast one-fourth of the southeast quarter of section 2, township 64, range 10 west; the northwest one-fourth of the northwest one-fourth of the northeast quarter of section 10, township 64, range 10 west; the north half of the southwest quarter of section 36, township 65, range 10 west; and the south half of the southeast quarter of section 36, township 65, range 10 west, all in Scotland county, Missouri. The court further finds that Conrad Bertram in his lifetime made advancements to the following defendants and in the following amounts: William Bertram, Henry Bertram, Fred C. Bertram, Jesse Bertram, Ben C. Bertram, Mary E. Lips, Adam E. Bertram and Louis E. Bertram, the sum of $800 each out of his estate and charged it as an advancement, and that the plaintiff and the other defendants have received nothing by way of advancements. The court finds that by his said will that Conrad Bertram gave to his wife Elizabeth Bertram all of his property, consisting of both real estate and personal property during her natural life or so long as she should remain his widow, except the following: He gave and bequeathed to his

children as follows: Adam E. Bertram, $800; Louis E. Bertram, $800; Burley E. Bertram, $800; Irvin A. Bertram, $800; Estella L. Bertram, $800; and the court finds that all of said advancements were paid by Conrad Bertram during his lifetime except the last three, and that he further provided in his said last will that if he paid said sum and advancements in his lifetime that the same should be charged to them so paid by him in his lifetime, and that it was further provided that after the death of his wife, Elizabeth Bertram, he bequeathed to his sons, William Bertram, Henry Bertram and Fred Bertram $100 each, and that the residue and remainder of his estate, both personal and real, was bequeathed to his sons and daughters to be equally divided among them as follows: Jesse A. Bertram, Mary E. Lips, Ben C. Bertram, Adam E. Bertram, Louis E. Bertram, Burley E. Bertram, Irvin A. Bertram and Estella L. Bertram; that he died intestate as to the plaintiff and that she is entitled to partition to said estate and the court finds that out of the lands of the deceased that parties hereinbefore charged with advancements should bring the same into hotchpot and the said advancements so charged to said parties should be added to the value of said land and the plaintiff be given a full one-twelfth interest, and the remainder be set off according to the terms and conditions of the will heretofore described, that is to say, to the widow during her life or during her widowhood, and the remainder to the heirs according to the terms of said will.

"And the court further finds that the plaintiff's interest in kind must be assigned to her by the commissioners hereinafter appointed, that is, that they take the whole value of the land in the petition described and add to it the advancements heretofore set forth to be brought into hotchpot in the sum of $6,400, and give to the plaintiff one-twelfth of the land and the advancements and the remainder shall remain subject to

the provisions of the will of the late Conrad Bertram and be held and enjoyed by the defendants as provided by the will hereinbefore set forth, and that the following commissioners be appointed to set off and assign plaintiff's interest: C. E. Smith, J. K. Shacklett and Fred Mohr. And that the said commissioners make a report of their proceedings at the next regular term of the circuit court of Scotland county, Missouri.''

On the 22nd day of August, 1903, the defendants filed their second motion for new trial, which motion was by the court overruled. This was followed by a motion in arrest of judgment, which was also overruled. From the decree and judgment in this cause the defendants prosecuted their appeal to this court, and the record is now before us for consideration.

### OPINION.

The record in this cause presents but one proposition for our consideration, and that is the sufficiency of the testimony upon the issue presented to warrant the trial court in finding that plaintiff was the granddaughter and legitimate heir of Conrad Bertram, deceased, and that her mother was the daughter of said Conrad Bertram.

Learned counsel for appellants devote most of their brief and argument to the proposition that plaintiff cannot maintain partition under the pleadings and facts of this case. It is sufficient to say upon that proposition that while this court has not expressly ruled that partition might be resorted to as a proper remedy for a pretermitted heir, yet such remedies have been entertained. Hockensmith v. Slusher, 26 Mo. 237, was a partition suit by pretermitted heirs to have their interests in the estate of the testator assigned to them. While it was ruled upon the disclosures of the record in Hill v. Martin, 28 Mo. 78, that partition was not the proper remedy, for the apparent reason that the estate had

been distributed, and some of the lands partitioned and parties holding title by reason of regular partition proceedings, yet the court did clearly indicate that it was by no means a settled question as to what manner pretermitted heirs could assert their right to the estate to which they are entitled by reason of no provision in the will of the testator, and pointed out certain cases where the rights were asserted in partition proceedings. RICH-ARDSON, J., speaking for the court in that case, said: "I do not find that it has ever been decided by this court in what manner a child not provided for in a will may assert his rights conferred by the thirtieth section. In Block v. Block, 3 Mo. 594, and Hockensmith v. Slusher, 26 Mo. 237, the right was claimed in partition proceedings. Beck v. Metz, 25 Mo. 71, was an agreed case. In Bradley v. Bradley, 24 Mo. 311, the children filed a petition against the widow and sole devisee for the assignment of her dower; and in Levin v. Stevens, 7 Mo. 90, and Guitar v. Gordon, 17 Mo. 408, the plaintiffs pursued the mode indicated in the thirtieth section."

In McCracken v. McCracken, 67 Mo. 590, the right of a pretermitted heir was asserted by a suit in ejectment. It was contended in that case that ejectment would not lie as it is contended in the case at bar that partition cannot be maintained. This court, in responding to the contentions, indicated very clearly that it did not regard any of the remedies, either of ejectment, partition or contribution, as exclusive; but that the circumstances and conditions surrounding the estate must indicate the proper remedy to be pursued. It was said by the court in that case, in discussing the propositions before it, that "it is urged, however, by the counsel for the defendant that pretermitted heirs cannot maintain ejectment, but must proceed under the 47th section of the Statute of Wills, or by bill in equity, for contribution. Waiving the fact that this objection should have been presented by the answer, and cannot be made for

the first time in this court, we may remark that there is in this State no fixed rule on this subject. Cases may easily be imagined in which, as was remarked by Judge RICHARDSON in Hill v. Martin, 28 Mo. 78, the pretermitted heirs should resort to the more flexible proceeding of a bill for contribution, rather than to an action of ejectment or partition, and he remarked further that he could not find that it had ever been decided by this court in what manner a child not provided for in a will should assert his rights under the statute creating an intestacy as to him by reason of such omission. . . . In Schneider v. Koester, 54 Mo. 500, which was a suit to set aside a will, brought by a claimant as a pretermitted heir, it was held that the will was not invalid, and the 47th section of the Statute of Wills was referred to as affording the proper remedy. The remedy offered by this section would be appropriate, perhaps, in all cases, but we do not see why, under certain circumstances, ejectment, partition, or a bill in equity for contribution, might not also be resorted to.''

In Bradley v. Bradley, 24 Mo. 311, there was a will made and executed by Thomas P. Bradley in which he omitted to make any provision for his children, but devised his entire estate to his widow, Ann Bradley. In that case the proceeding to assign dower to the widow was entertained, notwithstanding the widow in her answer denied all rights to the children in and to the estate of the deceased, and alleged that she was the sole and exclusive owner of all the land that the testator had at his death, and that she was the sole tenant thereof and that none of the other parties to the suit had any interest in it. While it must be frankly conceded that in this and other cases the question now presented by learned counsel for appellant was not raised, nor discussed, yet the fact that such proceedings have been entertained by the courts must be regarded at least as some authority that they were correctly recognized and that such proceeding was one

of the methods that a party had the right to invoke in asserting rights under the provisions of section 4611, Revised Statutes 1899. This section provides that "if any person make his last will, and die, leaving a child or children, or descendants of such child or children in case of their death, not named or provided for in such will, although born after the making of such will, or the death of the testator, every such testator, so far as shall regard any such child or children, or their descendants, not provided for, shall be deemed to die intestate; and such child or children, or their descendants, shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them, and all the other heirs, devisees and legatees shall refund their proportional part."

Section 4649, Revised Statutes 1899, provides a summary remedy for contribution under certain conditions; but as was ruled by this court in McCracken v. McCracken, supra, we do not see any valid or legal reason why, under certain circumstances, in order to assert the rights of a child omitted from the will, provided for in section, 4611, supra, either an action in partition, ejectment or in equity for contribution might not be resorted to.

Aside from what has been said upon the proposition as to plaintiff's right to assert her claim by an action in partition, it is manifest that upon the disclosures of the record defendants are in no position to contest such right upon this appeal. When this case was called for trial both plaintiff and defendants appeared, and the record before us, except in the second motion for new trial, which was filed on the 22nd day of August, 1903, some two weeks after the issue as to heirship was determined, is absolutely silent as to any challenge of the right of plaintiff to maintain this action. The record in this cause indicates conclusively that there was only one controverted question in this pro-

ceeding, that was as to whether plaintiff's mother was, by reason of the statutes, legitimated as a child of Conrad Bertram, and was the plaintiff in this proceeding, under the law, a legal heir of said Conrad Bertram. The trial court, in determining this issue, called to its aid a jury. The defendants in their abridged abstract of the record state that the court, over the objections of defendants, called a jury and submitted the issue of heirship; on the other hand, the additional abstract furnished by plaintiff shows the submission without any objection. This conflict necessitated an examination of the record and bill of exceptions transmitted to this court by the clerk of the lower court, and we are unable to find any objection or protest on the part of the defendants either to the trying of this cause or to the submission of what appears to have been the only issue submitted to the jury called by the court. While it may be conceded that this was not a case to be submitted to a jury, yet defendants are in no position to complain, for the reason that they joined issue voluntarily and without objection permitted the court to take the verdict of the jury upon that issue, and this court is not disposed to heed their complaints under such circumstances. The jury tried the issue and their finding was adopted by the court, which in effect must be treated as simply a finding by the court. Again, it will be observed that after the finding of the jury, in the first motion for new trial, defendants in no way challenged the right of plaintiff to maintain this character of proceeding, or the right of the court to proceed with it. It is true the right to submit the issue to the jury was challenged; however, doubtless the trial court regarded this as coming too late, defendants not having made any objections at the commencement of the trial to submitting the issue to a jury. The second motion for new trial was filed some two weeks after the finding of the jury. The only evidence preserved by the record or referred to in the abstract, was taken upon the trial

of the only issue in dispute between the parties to this suit.

Whether this proceeding is to be regarded as one in partition or an action in equity for the assignment of plaintiff's interest in the estate of her grandfather, as recognized by section 4611, we are unwilling, under the disclosures of the record before us, to reverse this cause for the reasons, upon this branch of the case, so earnestly and ably presented by counsel for appellants.

This brings us to the consideration of the only proposition which we regard as being properly before us upon this appeal, that is, as to the sufficiency of the testimony to support the finding of the court, that plaintiff's mother was legitimated under the provisions of section 2917, Revised Statutes 1899, thereby becoming a legal heir of Conrad Bertram. Section 2917 provides that "if a man, having by a woman a child or children, shall afterwards intermarry with her, and shall recognize such child or children to be his, they shall thereby be legitimated."

The rules of law applicable to this statute and to the proposition now in hand as to the nature and character of the showing to be made by a child in order to fall within the provisions of the statute, are nowhere more clearly stated than in Adger v. Ackerman, 115 Fed. 124. In that case the proposition as to the legitimacy of a boy, under the provisions of section 2917, was involved. On the one hand it was contended that under the statute the recognition by the husband of the children as his own, was conclusive evidence that he was their father. This contention was regarded as sound by a majority of the court; however, it is only necessary for us to say that we fully concur in the views of the late learned and eminent Missouri judge, that is, Judge THAYER, who gave expression to his views in that case on the proposition in a separate concurring opinion. His construction and interpretation of the provisions of the statute is so clear and so directly applicable

to the controversy in this proceeding that a rather full reproduction of it, we trust, will be pardoned.    He said:

"I concur, however, in the order affirming the decree below for the following reasons: The Missouri statute (R. S. 1899, sec. 2917), quoted in the foregoing opinion, declares that 'if a man, having by a woman a child . . .    shall afterward intermarry with her and shall recognize such child . . .    to be his,' it shall thereby be legitimated.  This statute, in my opinion, in effect makes the fact that a man recognizes a child, born out of wedlock, as his offspring, after he has married the mother, persuasive, if not conclusive, evidence that he is the father of such child.  The question is pertinent, why did the Legislature require recognition unless it was to be taken as evidence of paternity from one who was most liable to know the fact?  It cannot be reasonably claimed that the Legislature intended that recognition should have no probative force, as respects the question of paternity, and that this latter fact must be established otherwise than by recognition. No legislature would be apt to sanction such a doctrine, and, if it had been the intention of the Legislature to formulate that rule, nothing would have been said concerning recognition, but the statute would have simply declared that if a man has by a woman a child, and subsequently marries her, the child shall be deemed legitimate.  Besides, the rule which denies that recognition has any probative force or only slight weight, as bearing on the question of paternity, would leave an illegitimate child in practically the same helpless and unfortunate condition which such children occupied before the statute was enacted, since it would frequently be impossible for a child to prove its paternity otherwise than by recognition.  The statute in question was inspired by an humane purpose.  It was intended primarily for the benefit of those who were so unfortunate as to be born out of wedlock, and who, for that reason,

were made outcasts by the common law, and looked
upon as having no inheritable blood. As the statute is
remedial, and was enacted mainly for the benefit of
illegitimate children, it should be construed liberally
so as to afford them the utmost protection. Looking at
the statute from any point of view, I am impressed with
the idea that the words of the statute, 'and shall recog-
nize such child to be his,' would have had no place there-
in unless it had been intended that recognition should
be regarded as the very highest evidence of paternity.
I am of opinion, therefore, that the Legislature intend-
ed to give to acts of recognition the effect of evidence
of a very decisive character, upon the theory that a
man who marries a woman who has an illegitimate child
is most interested in knowing and is most liable to know
whether the offspring is his, and would not be prone to
recognize it as his offspring unless it was his. Statutes
of other States have been framed upon the same theory;
that is to say, making recognition evidence of paternity.
For example, in Michigan, the written acknowledg-
ment by a man that an illegitimate child is his, he hav-
ing married the mother, in and of itself renders the child
legitimate. [Comp. Laws Mich. 1897, sec. 9067.] Stat-
utes of a very similar character have been adopted in
Iowa, Minnesota, Montana, Alabama, and possibly some
other States. [Code Iowa, 1897, sec. 3150; Gen. St.
Minn. 1891, sec. 3887; Rev. St. Mont. 1895, sec. 302;
Code Ala. 1896, sec. 374.] In the present case it is not
necessary to adopt the extreme view that recognition of
an illegitimate child by a man who has married its
mother is conclusive proof of paternity which no evi-
dence can overturn, and hence that the legitimacy of a
child born out of wedlock, if it is recognized, by force
of the statute is placed on a firmer foundation than the
legitimacy of a child born in lawful wedlock, and no
decisive opinion need be expressed on that point. I
think that it is true, however, that by the recognition of
a child born out of wedlock, under the circumstances

aforesaid, such a child is placed in the same favorable position as one born during wedlock; that it can only be rendered a bastard, after such recognition, by the same kind of proof which is required to overturn the legitimacy of a child born in the course of wedlock; and that it is entitled to the benefit of the same presumptions."

The law as announced in that case is decisive of the question involved in the case at bar. While it may be said that the testimony upon the question of Conrad Bertram's recognition of the plaintiff's mother was conflicting, yet that there was ample testimony showing his recognition of her as his daughter to fully support the finding of the trial court no one will seriously deny.

We have indicated in the statement of this cause a sufficient part of the testimony on the part of the plaintiff to show that the finding of the trial court upon the issue presented was based upon substantial evidence, which, in our opinion, fully supports such finding.

Following the interpretation of the statute so clearly and correctly announced in Adger v. Ackerman, supra, and applying the rules therein announced to the facts of this case, we see no escape from the conclusion that plaintiff, under the law, is the granddaughter of Conrad Bertram, deceased, and as such is entitled to the interest in her grandfather's estate decreed by the trial court.

We have indicated our views upon the propositions presented by the record, which results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered.

*Burgess, P. J.,* and *Gantt, J.,* concur.