MELISSA MESSER, by WILLIAM F. YATES, Her Guardian, Appellant, v. ALICE HELFER, EVERETT ENDSLEY et al.

Division Two, June 3, 1919.

1. **INSANE GRANTOR: Capacity to Make Deed of Trust: Poverty.** Childbearing and poverty of a married woman do not constitute evidence of insanity.

2. ———: ———: **Renting Property.** Refusal to rent land to a certain person, although desirous of renting it in order that she might apply the rent money on a mortgage debt, does not constitute proof of the owner's insanity.

3. ———: ———: **Sudden Change of Conversation.** Sudden change in the subject of conversation, or abruptly walking away from those with whom she was conversing, is not evidence of mental incapacity in the grantor in a deed of trust.

4. ———: ———: **Rough Speech.** Speaking roughly to or about her children it not of itself evidence of mental incapacity to make a deed of trust.

5. ———: ———: **Singing Popular Song.** The occasional singing of a verse of a popular song by the mother of children is no evidence of her mental incapacity to make a deed.

Messer v. Helfer.

6. ———: ———: **Making Corn Dodgers on Stove.** The making of corn dodgers on a stove, instead of in a pan, by the poor mother of seven or eight children, is not evidence of mental incapacity to make a deed of trust for borrowed money. ·

7. ———: ———: **Eccentricities.** Peculiarities and eccentricities of the grantor do not render invalid her deed of trust, if she had sufficient capacity to understand the nature and effect of the transaction.

8. ·———: ———: **Subsequent Insanity.** The fact that the grantor, three months and twenty-nine days after she made a deed of trust on her land to secure money borrowed, was adjudged insane upon a lunacy inquiry in the probate court and has since been insane, does not, in the absence of any evidence that prior to executing the instrument she was insane or otherwise mentally incapacitated, afford a sufficient ground for setting aside the deed.

Appeal from Ray Circuit Court.—*Hon. Frank D. Divelbiss,* Judge.

Affirmed.

*Lavelock & Kirkpatrick* and *Martin E. Lawson* for appellant.

(1) The record of adjudication of insanity was conclusive as to the condition of Mrs. Stack (Messer) on June 24, 1895, and since that date. Crow v. Meyersieck, 88 Mo. 411. (2) If E. M. Endsley knew the plaintiff was not competent to transact business or knew enough about her condition to put him on inquiry then his mortgage was void, and defendants have no title. 23 Am. & Eng. Ency. Law (2 Ed.), 484. (3) If Mrs. Stack was not competent to make the deed of trust, when made, and E. M. Endsley did not know that fact, or did not know enough to put him on inquiry as to her condition, yet the deed is void, and he is entitled only to reimbursement for the amount loaned, less rentals. (4) Having received back in rentals many times the amount loaned, the condition is the same as to the validity of the deeds and their cancellation, as if he knew the facts. He has been reimbursed by her.

278 Mo.—27

(5) The maker of the deed of trust being incompetent to make it, it must be set aside. The only question is one of reimbursement under the facts.

*M. J. Henderson, Garner, Clark & Garner, John C. Jacobs* and *George W. Crowley* for respondents.

(1) Even in equity cases, if the evidence introduced by the respective parties is contradictory and conflicting, this court has repeatedly held that the chancellor, since he had the witnesses before him, with the opportunity of observing their demeanor upon the witness stand and their manner of testifying, is in a much better position to judge their credibility and the weight to be given their testimony than is the higher court. While in equity cases this court has the right to review and weigh anew the evidence, the usual practice is to defer largely to the findings of the trial court on all issues of fact, and this court will refuse to disturb the judgment of a trial court on the ground that the findings are against the weight of the evidence. Jones v. Thomas, 218 Mo. 540; Huffman v. Huffman, 217 Mo. 191; Daman v. Reeme's Executor, 246 Mo. 240; Brecken v. Fillingham, 209 Mo. 583. (2) The law authorizes a person who is *compos mentis* to make such a disposition of his property as he pleases and the burden of proving that he was mentally incapable of making a deed is upon the plaintiffs. The test of mental capacity is: did the grantor understand the nature of the business in which he was engaged and the effect of what he was doing? The evidence produced at the trial of this case not only failed to establish mental incapacity on the part of Melissa Stack, but, on the contrary, affirmatively and by overwhelming proof, established sufficient mental capacity to execute the deed. Pennington v. Stanton, 125 Mo. 658; Chadwell v. Reed, 198 Mo. 359; Wilson v. Jackson, 167 Mo. 135; Studybaker v. Cofield, 159 Mo. 596; Kinzer v. Kinzer, 130 Mo. 126; Cutler v. Zollinger, 117 Mo. 92; Rickey v. Baines, 168 Mo. 600; 22 Cyc. 1170; Buckey v. Buckey, 38 W. Va. 168.

(3) The finding of the chancellor in this case was proper, for the further reason that there was no evidence introduced showing that E. M. Endsley, the beneficiary in the deed of trust, had any knowledge or such information with respect thereto as would put a prudent man on inquiry, that Melissa Stack was mentally incapable of making a deed. Rhoades v. Fuller, 139 Mo. 187.

MOZLEY, C.—The plaintiff, Melissa Messer (formerly Melissa Stack), brings this action by William F. Yates, her guardian, and it has for its purpose the setting aside of a certain deed of trust executed by the plaintiff on the 25th day of February, 1895, in which one Steven Messer was made trustee, to secure to one E. M. Endsley a note for $500, which sum he, on said date, loaned to the plaintiff. Said deed of trust covered the east half of the northeast quarter of section eleven, township fifty-one, range twenty-nine, in Ray County, Missouri, except a tract theretofore conveyed to one Brasher off the east and south sides thereof for a private road.

The petition is in two counts, the first in equity and the second in ejectment. The first count bases* plaintiff's right to have said deed of trust set aside on the ground *that she was without mental capacity to make it at the time it was executed, that is on said 25th day of February, 1895,* and further seeks to set aside the deed to the purchaser under the foreclosure sale under said deed of trust and all mesne conveyances from said foreclosure sale of said land down to defendant Everett Endsley, and that they be declared a cloud upon plaintiff's title, cancelled and for naught held, and that the title thereto be decreed in the plaintiff. The second count merely seeks to recover the possession of said land.

On the 17th day of August, 1891, the plaintiff, Melissa Messer (at that time Melissa Stack), by war-

ranty deed from William Vance and wife, became the owner in fee of the land above described and, as above stated, executed said deed of trust thereon on said 25th day of February, 1895. On the 27th day of February, 1895, just two days after said deed of trust was executed, plaintiff and Steven Messer, the trustee therein, intermarried. On the 24th day of June, 1895, plaintiff was adjudged by the probate court of Ray County to be of unsound mind and incapable of managing her own business and a guardian was appointed for her. This proceeding was had three months and twenty-nine days subsequent to the execution of said deed of trust. On the 3rd day of April, 1897, default having been made in the payment of the debt and interest in said deed described, and the trustee therein, the husband of plaintiff, having refused to act, the then acting sheriff of Ray County, at the request of the legal holder of said note, foreclosed said deed of trust in due and legal form, and the holder and owner of said note, E. M. Endsley, became the purchaser of said land for the price and sum of $600 and, as above stated, the title thus acquired, by subsequent conveyances, vested in Everett Endsley for a valuable consideration.

There is no controversy in the pleadings, or otherwise, between plaintiff and defendant except as to the mental capacity of the plaintiff to make said deed of trust on the date it was made, the plaintiff, by her guardian, asserting that she was mentally incapacitated to make it and the defendant that she was not, and further contending that the proof brought in support of the affirmative of the proposition, if true, was wholly insufficient to establish mental incapacity on her part to make said deed of trust on the date that it was made. This proposition was the crux of the case in the court below, and as will readily be seen, it is solely a question of fact. All testimony tending to prove the sanity of plaintiff after she had been adjudged insane by the probate court on the 24th day of June, 1895, was by the court excluded from consideration. Many witnes-

ses were examined and the learned chancellor after seeing the witnesses and hearing all of the competent testimony that was offered, resolved this question of fact in favor of defendant, evidently taking the view that there was no testimony *establishing mental incapacity of plaintiff to make said deed of trust on the 25th day of February, 1895, and decreed that plaintiff was of sound mind at that time,* and also that defendant, Everett Endsley, was the owner of said land and that his co-defendants had no interest therein.

Motions for new trial and in arrest of judgment were filed and overruled by the court, and plaintiff comes here as appellant. In this court learned counsel for appellant have limited the issue presented for our determination to a single question of fact, that is, *was the plaintiff mentally incapacitated to make said deed of trust on the 25th day of February, 1895?* We quote from appellant's reply brief as follows:

"The appellant does not question the law cited by respondent, but says that no one can carefully read the evidence in this case and come to any other conclusion than that Melissa Messer, at the making of the deed of trust in question, and for a long time before, was wholly incapable of understanding the deed of trust, and ever since then has remained in that condition."

The issue thus presented necessitates an examination of the facts relied upon by appellant to establish mental incapacity and the facts offered by defendant tending to prove mental capacity. Many witnesses testified, but we shall not do more than to set out the substance of their testimony. On the part of the plaintiff it shows, (a) that she was the mother of seven or eight children and that she did not dress them or herself in accordance with the idea entertained by some of the witnesses, although the record abounds with undisputed evidence of her squalid poverty. We pass this feature of the testimony with the remark that, in our judgment, it would be a dangerous attempt for a court to undertake to establish as a precedent that child-

bearing and poverty, either singly or combined, constituted evidence of insanity. (b) Further it was testified that she hesitated about, and finally declined, to rent her farm on which the deed of trust in question had been placed, to one of the witnesses. If this incident has any probative value whatever, it manifestly would be in favor of plaintiff's sanity. It discloses that she knew he was trying to rent her farm and that she declined to contract with him. She may have had many reasons for declining to rent to this witness which were entirely satisfactory to her. We think her conduct in this transaction shows, unmistakably, that she understood and appreciated what she was about and could not, therefore, by any possibility, be distorted into evidence of insanity. (c) The evidence on the part of plaintiff further shows that, in conversation, she occasionally changed the subject rather abruptly and would possibly walk away. This has been done many times by persons to whom no suspicion of mental incapacity attached. The writer has always regarded (and now regards) such conduct most frequently in the light of necessary self-defense rather than as furnishing evidence of mental incapacity of one who was probably tired of a conversation. (d) It is further said that plaintiff spoke roughly to or about her children. This could have happened and yet furnished no evidence of mental incapacity. (e) It is also proven that she would occasionally sing a verse of that once popular song, ''After the Ball is Over.'' and this is charged as an item of her alleged insanity. Historically speaking, it will be recalled that at about the time of plaintiff's alleged mental incapacity, this song was one of the most popular songs extant. It was sung on all the stages and by all the musically inclined off the stage and even by those who had no music in their souls. All were singing or trying to sing this song manifestly with no thought upon their part that subsequently they might be accused of furnishing evidence of their own mental incapacity. This song has had its period of popularity—has run its

course—and has, like many others once popular, passed into "innocuous desuetude," and we hesitate to hold that because Mrs. Messer occasionally sang a verse of it while it was popular she thereby furnished evidence of mental incapacity to make the deed of trust in question. (f) A fair sample of what the witnesses relied on in reaching their conclusion that plaintiff was insane when she made the deed of trust, I find in the testimony of Isom Turner, and, as it throws light on the probative value of the whole of plaintiff's evidence upon which reliance is placed to set aside said deed of trust, we quote the following therefrom:

"Q. You say you did not regard this woman as being insane at all? A. I didn't think she was bright by any means.

"Q. You didn't think she was an insane person? A. Well I couldn't say I thought she was insane. I thought she was an idiot.—G. But you say she wasn't insane? A. I couldn't say she was or wasn't, but I don't think she had a good mind.

"Q. You say the only evidence you had to make up your mind that she was of unsound mind, she made corn dodgers on the stove? A. And other things. I have had her turn her stock right out in my field.

"Q. What made you think it wasn't right to cook dodgers on the stove? A. I always had mine in a pan.

"Q. Old fashioned folks used to put them on a griddle? A. I never made mine—

"Q. You don't mean to tell the court that she was crazy because she put dodgers on the stove? A. I am only telling what you tell—

"Q. The finest hotels in the country broil meat and make toast on the stove? A. Not for me they don't.

"Q. And you think that a person that would do that and would make bread on top of the stove would be regarded as of unsound mind? A. Take it just as you like it and the court can decide, but they dont cook mine on top of the stove."

The foregoing constitute the chief items of alleged unusual conduct upon the part of Mrs. Messer which are relied upon as showing that she was mentally incapacitated to make said deed of trust. We are forced to the conclusion that it falls far short of establishing her mental incapacity to make said deed of trust on said 25th day of February, 1895. It may be, and doubtless is true, that she was peculiar and eccentric, but it stands out prominently in this record and is worthy of note that no question was made as to her sanity from August, 1891, when she bought the land from Vance, until the 24th day of June, 1895, as above stated three months and twenty-nine days after she had borrowed the money from Endsley and executed the deed of trust in question to secure the payment thereof.

On the other hand, without undertaking to set out in full the evidence offered by defendant, it is sufficient to say that it discloses that she bought the land in controversy from Vance and, in doing so, went on the land, two strips (once alone and once with her mother), to inspect it; that she was satisfied with it, but thought she ought to pay not more than $1400, but did, on the advice of her half brother, pay $1500; that this sum was paid by her check with her own money, she signing the check and handing it to Vance and he, in turn, handing the deed to her. It shows that she placed said deed of trust on the land which was duly executed and acknowledged by her, and that no one questioned her mental capacity nor was there any suggestion that she did not know precisely what she was doing; it shows that shortly thereafter she sought to rent the land to one of the witnesses for cultivation with the view of having the rental applied to the discharge of the debt and interest mentioned in said deed of trust; it shows also that she took care of her stock and milked two cows, etc. These things are undisputed by the record and, to our mind, establish the contrary of mental incapacity.

As we view the record there is no evidence of any probative value tending to establish mental incapacity

of plaintiff on said 25th day of February, 1895, or at any other date prior to the 24th day of June, 1895, when she was adjudged to be of unsound mind by the probate court of Ray County, and that incident, as above stated, was three months and twenty-nine days after the execution of said deed of trust, and is, in our opinion, too remote, under the facts of this record, to throw any light on her mental condition when said deed of trust was made.

The test in determining whether one had sufficient mental capacity to make a valid deed has uniformly been held by the authorities of this State to be: "Mere peculiarities or eccentricities of the grantor do not make a deed invalid, if he had sufficient capacity to understand the nature and effect of the transaction." [Ellis v. McNally, 177 S. W. (Mo.) 654; Huffman v. Huffman, 217 Mo. 182; Chadwell v. Reed, 198 Mo. 350.]

In the case last cited the learned judge held the test of making a valid deed as follows: "The legal test of the capacity of a grantor making a voluntary conveyance of all of his property to his wife, to the exclusion of his children, is his capacity to understand the matter in hand and the effect of the transaction."

Without further pursuing the subject, we hold, upon the whole record, that Melissa Messer, at the time she executed the deed of trust in question, was capable of understanding the nature and effect of the business she was engaged in and was fully competent to make said deed of trust. We hold, therefore, that the case was properly tried in the court below, and accordingly affirm the judgment. *Railey* and *White, CC.,* concur.

PER CURIAM:—The foregoing opinion by Moz-LEY, C., is adopted as the opinion of the court. All of the judges concur.