LEILA ADA NEVINS v. PALMER GILLILAND et al., Appellants.

Division Two, November 19, 1921.

1. **PARTITION: Child of Intestate: Finding of Trial Court.** A partition suit is an action at law, and when tried to the court without a jury and without instructions, a finding that plaintiff was a child of intestate, if supported by substantial evidence, will not be disturbed on appeal, unless error in the admission or exclusion of evidence was committed. Not only so, but where all the substantial

evidence in the case is to the effect that plaintiff was a child of intestate, and was so recognized by him, and the evidence to that effect is positive, the judgment would have to be reversed on appeal if the finding had been to the contrary.

2. **APPELLATE PRACTICE: Searching Record.** It is not the province of an appellate court to search the record for support of a general assignment that the trial court erred in admitting in evidence statements of deceased parents that plaintiff in the partition suit was their child, but it is the duty of appellant's counsel to state in their assignments of errors and under their points and authorities the specific matters complained of and to designate where in the record the rulings are to be found.

3. **ADULTERINE BASTARD: Recognized by Father.** The evidence shows that plaintiff was an adulterine bastard; that she was the child of intestate, conceived and born while her mother was the wife of another man; that the mother was afterwards divorced from her then husband, and she and intestate married, and both recognized plaintiff as his child to the time of their respective deaths, and she was so recognized by the community in which they resided. *Held*, that, under the statute (Sec. 312, R. S. 1919), plaintiff was a "legitimated" child of intestate, and was entitled to share equally with his other children in his estate.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED.

*Moore, Barrett & Moore* for appellants.

(1) The court erred in declaring the plaintiff herein an heir of John Gilliland, deceased. (2) The court erred in finding the issue for plaintiff, as such finding illegitimatized a child born in lawful wedlock. (3) The court erred in admitting evidence as to statements of the purported father and the mother of the plaintiff, as to the plaintiff being an illegitimate child of John Gilliland and Mary Reed. (4) Proof that a father always treated plaintiff and her sister as his daughters, that he called the plaintiff's children his grandchildren, does not establish paternity. Radelle v. Teo, 6 La. Ann. 129. A child born in lawful wedlock and recognized by the father

is held conclusive proof of legitimacy. Bower v. Graham, 225 S. W. 978. Birth in lawful wedlock is prima-facie evidence of legitimacy, and must be overcome by the strongest testimony. If marriage be proven nothing can impugn' the legitimacy of the issue, short of proof of facts showing it to be impossible that the husband could be the father. Patterson v. Gains, 6 U. S. 55. Non-access not probable by husband or wife must be shown. 21 Ency. Evidence, 240.

*Jas. V. Pitts* and *Patterson & Page* for respondent.

(1) The statute is broad enough to include an adulterine bastard—that is, a child born of a married woman by a man not her husband. Sec. 312, R. S. 1919; Bower v. Graham, 225 S. W. 978; Drake v. Hospital, 266 Mo. 1; Ives v. McNicoll, 59 Ohio St. 402; Breidenstein v. Bertram, 198 Mo. 328. (2) This is a suit at law. No issues of an equitable nature were made by the pleadings. No declarations of law were asked or given. The finding of the trial court upon the issues of fact has all the validity of the verdict of the jury, and if supported by the evidence is not subject to review on appeal. Watson v. Priest, 9 Mo. App. 263; Smith v. Royse, 165 Mo. 654; Heynbrock v. Hormann, 256 Mo. 21; Woods v. Johnson, 264 Mo. 289.; Holloway v. Holloway, 97 Mo. 628; Coffman v. Gates, 142 Mo. App. 648. (3) The only issue tried by the court was that of the paternity of plaintiff. On this issue of fact the evidence was ample to sustain the finding of the court on every point: (a) As to the marriage of Gilliland to plaintiff's mother; (b) as to the recognition of plaintiff by Gilliland as his daughter; and (c) as to the fact that Gilliland was actually the father of plaintiff. Drake v. Hospital, 266 Mo. 1; Bower v. Graham, 225 S. W. 978; Breidenstein v. Bertram, 198 Mo. 328; Ives v. McNicoll, 59 Ohio St. 402; Adgar v. Ackerman, 115 Fed. 124. (4) Where a case is tried by the court sitting as a jury, and no declarations of law are asked or given, and both competent and incompetent testimony has been omitted, if there is in the record sub-

stantial competent evidence to support the finding an appellant court will indulge the presumption that the trial court based its finding upon the competent evidence and disregard the incompetent. Lewis v. Frankle, 158 Mo. App. 262; Bank v. Wodz, 197 Mo. App. 686; Laumier v. Gehner, 110 Mo. 122; McCullough v. Ins. Co., 113 Mo. 606; Cavell v. Tel. Co., 164 Mo. App. 630; State ex rel. West v. Diemer, 255 Mo. 336; Jackson v. Jackson, 80 Md. 176; Smith v. Smith, 140 Wis. 599.

RAILEY, C.—We gather, from what was said at the *oral* argument of this cause, in connection with the abstracts and briefs on file here, that the case was originally commenced in the Circuit Court of Ozark County, and transferred by change of venue to Greene County, Missouri. The case was tried in the last named court, on an amended petition filed March 13, 1920.

Said petition, among other things, alleges that on February 2nd, 1919, John H. Gilliland, father of plaintiff, died intestate, in Ozark County, Missouri, the absolute owner of the northeast quarter of Section 34, and the northwest quarter of Section 35, also all of that part of the southwest quarter of the southwest quarter of Section 26 lying on the east side of the main channel of Turkey Creek, containing 35 acres; all in Township 24, of Range 15, of Ozark County aforesaid, and containing in all 235 acres, more or less.

It is averred that John H. Gilliland left surviving him the defendant, Phronia Gilliland, his widow, who duly elected to take a child's part; that plaintiff, Lelia Ada Nevins, and the defendants, Palmer Gilliland, Ranie Gilliland, Parley Smith and Olga Gilliland, are the only children and only heirs at law of the said John H. Gilliland, deceased; that the estate of said John H. Gilliland is in process of administration in the Probate Court of Ozark County; that there are ample assets in the hands of the administator belonging to said estate to pay all claims and demands against the same; that said estate is solvent, looking only to the personal property; that

plaintiff and defendants are owners as tenants in common of the land aforesaid, each owning an undivided one-sixth interest thereof; that all of the defendants have appeared and answered to the merits of this cause; that on account of the number of owners, the location and value of said lands, the same being rough, untillable and of little value, the same cannot be divided in kind between the parties aforesaid, without injury to their respective interests.

The petition concludes with a prayer that partition be made of said land among plaintiff and defendants; that the court decree the same is not susceptible of being divided in kind; that said land be ordered sold by the Sheriff of Ozark County, for partition; that after paying all costs and allowances, the proceeds remaining from the sale of said land be divided and partitioned among the owners thereof, as their respective interests may be found by the court. General relief is also prayed for in the petition.

All of the defendants answered with a general denial.

The trial was commenced on January 30th, 1920, before Judge Kirby, without a jury. The following occurred at the commencement of the trial:

"By THE COURT: Before the introduction of any evidence in this cause it is agreed by and between the plaintiff and defendants that there is no controversy between the parties as to any of the material facts of the case, except defendants deny that the plaintiff has any interest whatever in the land, partition of which is sought. This admission is made subject to the right of the plaintiff to amend her petition so as to set up any facts affecting the shares of any of the parties which may have occurred since the institution of the suit."

The undisputed evidence discloses that plaintiff was born on February 27th, 1876, at the home of John H. Gilliland in Ozark County, Missouri; that Andrew Jackson Reed was married to Mary E. Hooper, on February 9, 1873; that in September or October, 1874, said Reed and wife moved to the home of John H. Gilliland, who was

then a bachelor, occupying a house with *one room,* on said Gilliland's land; that Reed and wife, with said Gilliland, occupied this one-room house, during the winter of 1874-5. The defendants read in evidence the deposition of Jack Reed, in which he testified, that plaintiff was born after he and his wife moved to Gilliland's home; that from the last of April, 1875, to the last week in June of said year, he was in Nevada, Missouri, 150 miles from John H. Gilliland's home; that he did not live with his wife during said period. Reed further testified, without objection, that after plaintiff was born, while they were at the Gilliland home, she cried one morning and he (Reed) "sorta spanked it;" that John H. Gilliland told him not to do it; that he said to Gilliland, "What is it your business whether I whip it or not?" and Gilliland told him that plaintiff was not his child; that plaintiff's mother was present and heard this talk; that during the same day he had another talk with Gilliland and his wife; that Gilliland told him the plaintiff was his (Gilliland's) child; that he asked his wife if that was true, and she said it was; that he afterwards left her and obtained a divorce from her in April, 1879; that he never claimed plaintiff as his child; that John H. Gilliland claimed she was his child.

The following appears in defendant's statement of the case:

"Shortly after the wife took up her abode with Gilliland, she gave birth to another child, which was named Leora and which is admitted to be the child of Reed. Later another child was born of her, which was named Palmer, and who is admitted to be a son of John H. Gilliland. After the birth of these children, and on November 9, 1886, John H. Gilliland and Mary E. Reed were married, and they continued to live together until the year 1890, when the mother died.

"During all the time Gilliland and his said wife, and the two girls, Leora and Lelia, and the baby, Palmer, when he was born later, lived together as one family. Gilliland supported, educated and cared for them all

alike, and referred to them all as his children. When the two girls grew up, he still looked after them and called them his children.

"Gilliland died in about 1918, and after his demise this suit was filed, the plaintiff claiming an interest, and such issue being submitted to the court, the issues were found for plaintiff, hence this appeal."

The following facts are undisputed; (1) That John H. Gilliland repeatedly stated, while plaintiff was living with him, to various persons, that she was his child, and he always treated her as such; (2) that Jack Reed's wife stated to many persons that plaintiff was her child, and that John H. Gilliland was the father of plaintiff.

There was substantial evidence, offered at the trial, tending to show that plaintiff was a nine month's child, and was conceived while Jack Reed was at Nevada during April, May and June, 1875; that plaintiff lived with her mother and Gilliland, as her parents, until 1890, when the mother died; that on November 9, 1886, said John H. Gilliland and plaintiff's mother, Mary E. Reed, were married, and continued to live together as husband and wife to the date of her death.

The record contains other substantial testimony tending to show that plaintiff was the child of Gilliland and Mrs. Reed, and that she was so recognized by the community in which they lived. In fact, there was no substantial testimony in the case tending to show that plaintiff was not the child of John H. Gilliland.

On February 7, 1921, the court found the issues in favor of plaintiff and rendered a decree as prayed for in the petition. Defendants filed motions for a new trial and in arrest of judgment. Both motions were overruled and the cause appealed by them to this court.

I.   This is an action at law, tried before the court without a jury, and without instructions. There is not only substantial evidence in the record tending to show that plaintiff was the child of John H. Gilliland, but there is no substantial evidence to contrary. Unless, therefore, the trial court

**Finding of Trial Court.**

committed reversible error in its rulings, or in regard to the admission or rejection of testimony, during the progress of the trial, its judgment is conclusive against defendants on this appeal. [Bobb v. Frank L. Talbot Theater Co., 221 S. W. (Mo.) l. c. 374; Cowan v. Young, 220 S. W. (Mo.) l. c. 872; Case v. Sipes, 217 S. W. (Mo.) l. c. 307; Hayes v. McLaughlin, 217 S. W. (Mo.) l. c. 264; Franke v. Franke, 213 S. W. (Mo.) l. c. 42; Bingham v. Edmonds, 210 S. W. (Mo.) 885; Roloson v. Riggs, 274 Mo. l. c. 528, 203 S. W. 975; In re Lankford Estate, 272 Mo. 1, 197 S. W. 147.]

(a)  The evidence is conclusive, as above indicated, that plaintiff was the child of John H. Gilliland, and there is no substantial evidence in the record to the contrary. This issue was agreed upon at the commencement of the trial below, as being the only one in the case. Under the ruling of this court, in In re Lankford Estate, 272 Mo. 1, it would have been our plain duty to have reversed and remanded the cause with directions to find for plaintiff, had the court below, on the facts before us, found the issues in favor of defendants, as the judgment would have been without evidence to support it.

II.  At the oral argument of this case, counsel for appellants suggested that some exceptions were saved to the rulings of the court during the progress of the trial. After carefully reading both abstracts of record and the respective briefs of counsel, we are satisfied that the trial court committed no error against appellants of which they could legally complain in this court.

*Adverse Rulings.*

III.  The only assignment of error made by appellants in their brief, reads as follows:

(3)  "The court erred in admitting evidence as to statements of the purported father and the mother of the plaintiff, as to the plaintiff being an illegitimate child of John Gilliland and Mary Reed."

We are not referred to any part of the record where such rulings can be found, nor are any of the matters

above mentioned set out in the brief.  It is not the province of this court to search the record for **Searching Records.** matters of this character, but the duty devolves upon appellants to state in their assignment of errors, or under their ":Points and Authorities," the specific matters complained of, and to designate where such rulings can be found in the record.  [Christine v. Luyties, 217 S. W. (Mo.) l. c. 60.]  Aside from the foregoing, after reading the entire record, we find the above complaints are devoid of merit.

IV.  It appears from the evidence that while Jack Reed was in Nevada, Missouri, during the months of May and June, 1875, his wife became pregnant, with a child by John H. Gilliland; that the plaintiff herein, was the child above mentioned; that Jack Reed and his wife were divorced in 1879; that said John H. Gilliland married Mrs. Reed in 1886, and the plaintiff lived with them as Gilliland's child until the death of her mother in 1890.

Section 312, Revised Statutes 1919, provides that: "If a man, having by a woman a child or children, shall afterward intermarry with her, and shall recognize such child or children to be his, they shall thereby be legitimated."

We have heretofore construed the above statute to include an adulterine bastard.  This applies to a child born of a married woman by a man not her husband.  [Bower v. Graham, 225 S. W. (Mo.) 978; Drake v. Hospital Assn., 266 Mo. 1; Breidenstein v. Bertram, 198 Mo. 328.]

Without pursuing this inquiry further, we are satisfied with the conclusions reached by the trial court, and accordingly affirm its judgment.  *White* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court.  All of the judges concur.