DELBERT NEAL v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant.—No. 39083.—184 S. W. (2d) 441.

Division One, December 4. 1944.

Rehearing Denied, January 2, 1945.

*Charles L. Carr* and *Harding, Murphy & Tucker* for appellant.

*Will H. Hargus, J. C. Hargus, Ralph P. Johnson, Bryant Johnson* and *Len L. Balke* for respondent.

782

DALTON, C.—Action for damages for personal injuries sustained on account of alleged negligence of defendant. The jury returned a verdict for plaintiff for $15,000, upon which judgment was entered, and defendant appealed.

Respondent has filed a motion to dismiss the appeal on account of alleged violation of Rule 15 of this court. The motion is not without some substantial merit, but the dismissal of an appeal is a drastic penalty, unless fully warranted by the violations complained of. We think the ends of justice will be best served by ruling the appeal on its merits. The motion is overruled.

Error is assigned (1) on the court's action in refusing a demurrer to the evidence at the close of plaintiff's case and at the close of the

whole case; (2) on the giving and refusal of instructions; (3) on the overruling of objections to alleged improper and prejudicial argument; and (4) on the court's refusal to strike out certain evidence.

On August 17, 1941, plaintiff, a filling station employee who had been injured in a holdup, was being rushed to the General Hospital in Kansas City for examination and treatment, when the ambulance in which he was riding was struck by one of defendant's street cars at a street intersection. Plaintiff was thrown out of the ambulance onto the street. When he later reached the hospital, he had a skull fracture and other injuries. Whether the injuries for which recovery is sought were received in the collision or in the holdup and whether certain disabilities existing at the time of the trial resulted from injuries received in the collision, or from subsequent disease, were major issues in the trial of the cause.

■ We consider first the trial court's refusal of defendant's demurrers to the evidence. A statement of the evidence most favorable to plaintiff is required. In stating the facts, however, we must keep in mind that, although entitled to the benefit of all favorable evidence and inferences from the whole case, plaintiff is bound by his own testimony concerning the facts surrounding the receipt of his injuries; that he may not have the benefit of evidence inconsistent with his own testimony (Meese v. Thompson, 344 Mo. 777, 129 S. W. (2d) 847, 850; Evans v. Farmers Elevator Co., 347 Mo. 326, 147 S. W. (2d) 593, 597; Hayes v. S. S. Kresge Co. (Mo. App.), 100 S. W. (2d) 325, 328); and that outstanding conceded facts may not be disregarded. Walter v. Alt, 348 Mo. 53, 152 S. W. (2d) 135, 142. We hold that these rules obtain in this case, although plaintiff did not take the witness stand in his own behalf, but relied wholly on the testimony of others, and thereafter as a part of defendant's case, defendant offered the deposition of plaintiff, which was admittedly correct and was not impeached or contradicted in any manner by plaintiff. Except for plaintiff's own testimony and his admitted and undisputed admissions, defendant's evidence will be disregarded in our statement of facts, unless such evidence aids the plaintiff's case.

Plaintiff's deposition was taken April 28, 1942, following his injury in August 1941. According to plaintiff, he was 37 years of age at the time he received his injuries. He was employed by the Silver King Oil & Gas Company as a filling station attendant at 2908 Southwest Boulevard, Kansas City, Missouri, and worked from 6 P. M. to 6 A. M., receiving $12.00 per week for his services, plus tips, which amounted to from $3.00 to $13.00 additional per week. On the night of August 17, 1941, "way after night," "about midnight or later," two medium-sized white men came to the filling station in an automobile. They came in the office where the lights were on and bought some soda pop. One of the men had a gun. Plaintiff testified: "I was knocked in the head. . . . A holdup, I guess. . . . I

figured it was these two people that did it, because that is the last I knew.'' Plaintiff had forty dollars of his own money in his vest pocket and he never saw it again. He was unconscious, how long, he did not know, but, thereafter, he ''kind of came to enough to hear people talking around there.'' Plaintiff did not know what hit him, but said he was struck in the face, because his ''glasses were all broke, and teeth were all broke out.'' There wasn't enough of the glasses left to repair, the glass was broken in little bits. Plaintiff's upper and lower false teeth were broken, ''all of them,'' although they were later patched up. His face was cut or mashed, and he could feel the blood running down from his nose and forehead (stitches were later taken in his forehead). He remembered that two policemen came to the filling station. He heard them talking, but did not know who they were. He further testified that an ambulance came, he believed there were three men with it, and they helped him into it. He ''remembered hearing wheels rolling, and something hit'' (just felt the jar), and that was the last he remembered until he woke up in the hospital sometime later.

Plaintiff's petition pleads and, therefore, expressly admits ''that, on or about the 17th day of August, 1941, during the early morning hours of said day, plaintiff was working as a filling station attendant at 2908 Southwest Boulevard . . . and, while so engaged, plaintiff was struck on the head by a robber with a blackjack or other deadly weapon; (and) that, thereafter, at approximately 3:52 A. M. on that day, plaintiff was a patient and passenger in an ambulance . . . being transported . . . to the said General Hospital for treatment.''

Plaintiff filed a claim for workmen's compensation on account of injuries received in the assault and in the subsequent collision, The claim, which it is admitted was filed on behalf of plaintiff against his employer, was offered in evidence by defendant and was uncontradicted in any manner by plaintiff. It stated that, ''while working as filling station attendant for employer at 2908 Southwest Boulevard . . . , employee was struck on the head by a robber with a blackjack or other deadly weapon and was thereby rendered unconscious''; and that ''additional injuries'' were subsequently received when a street car collided with the ambulance in which he was riding.

After plaintiff was injured in the holdup, an ambulance arrived at 2908 Southwest Boulevard with a driver, a hospital interne (Dr. Beller) and a medical student (all witnesses for plaintiff). They found plaintiff lying on the floor of the filling station and in a somewhat dazed condition. ''He came out of his daze and answered Dr. Beller's questions.'' With some assistance, plaintiff got to his feet and was able to stand. He complained of being ''struck on the head and knocked down,'' and said that he had been held up and robbed. The doctor testified that he examined plaintiff's head by feeling of

it, but that he found no bumps or bruises and no source of bleeding or external evidence of violence, other than the source of some blood about plaintiff's mouth. The blood came from the inside of plaintiff's upper lip. Plaintiff's speech was coherent and he could understand and comply with directions. With the assistance of the ambulance driver and the doctor, who took hold of plaintiff's arms (one on either side), plaintiff was able to walk to and enter the ambulance, where he laid down on a wheeled cot and took hold of a strap on the inside of the ambulance, as directed. The doctor "did not think he was sick enough and in bad enough condition but what he could stay on the cot by himself" so the doctor and medical student took a seat with the driver. Concerning the reasons for taking plaintiff away in the ambulance, Dr. Beller stated: "I just merely inspected the man. I looked him over, summed him up briefly, felt of his head, and determined that he had a condition which I thought needed care, needed attention, which I thought could best be given at the emergency room, where a further examination and such attention as we would deem necessary on further examination could be best administered."

As the ambulance moved east in the right-hand trafficway of 20th street, a 75 foot, two trafficway, street with a concrete medial strip in the center, it approached the intersection of 20th and Main streets at a speed of between 25 and 35 miles per hour. The regular automobile headlights and an emergency red beam light were lighted. The siren was sounding continuously, and so loudly that the sound could be heard and was heard for a distance of 2 or 3 blocks. Under the ordinances of the city, the ambulance had the right of way over defendant's street car, which was then moving north on Main street at 15 to 30 miles per hour. The street car was 15 to 30 feet south of 20th street when the ambulance was 15 to 20 feet west of the west curbline of Main street. The street car (which had the green traffic light for the intersection) did not stop, slow up or change its speed. The motorman had his head turned toward a passenger to his right and was facing "to his right and back about a 35 degree angle from his relative position to the front." He didn't hear the siren until after the collision. The driver of the ambulance swerved sharply to his left in the intersection and the front of the street car hit the right rear of the ambulance. The collision occurred north of the center of the eastbound lane on 20th street and upon the northbound street car tracks of Main street. The force of the impact smashed the ambulance rather badly and turned it around ("it just spun around") in a half turn to the right (clockwise). The ambulance proceeded east, turned south across the westbound trafficway of 20th street and then west and fell over to the north, on its right side, in the westbound trafficway of 20th street, at approximately the east curbline of Main street. The tire marks showed a half circumference of 30 to 40 feet, beginning at the east rail of the northbound street car track. As

the rear of the ambulance swung around clockwise, the two rear doors came open and plaintiff and the wheeled cot came out and came to rest in the north gutter of 20th street. The cot was badly bent up, with one wheel bent under, and plaintiff lay off the cot against the curb on the north side of 20th street (some 40 feet from the place of the collision).

After the collision, the medical student (from a distance of 3 or 4 feet) observed lumps on the back of plaintiff's head and lacerations, which he did not observe at the filling station. Plaintiff's witness Baker, who stood 40 feet east of Main on the north side of 20th street, saw the two rear doors of the ambulance come open as it swung around and saw plaintiff come out "like a cannon shot over against this wall" (curb). Witness said he heard a sound like a hit, like a fall, "smack like you throw a ball and hit something." Witness ran there and found plaintiff lying "partly on the cot." Plaintiff appeared battered up, bloody, showed no signs of life, and had blood "all around his head." The witness later said that he neither saw the cot nor the man come out; that he saw an object fly out; that he saw it when it hit, near the north curb of 20th street, east of Main street; that he heard the thump; that he didn't see the cot or plaintiff's body, until they came to rest; that he knew they came out of the ambulance; that he didn't know what came out but, when he got there, he saw plaintiff in a pool of blood; that plaintiff was unconscious and still; and that he thought the plaintiff was dead. It was this testimony of witness Baker that appellant contends should have been stricken out because the witness admitted he didn't see either plaintiff or the cot come out of the ambulance. We think the court properly overruled the motion to strike out. All conflicts were for the jury.

There was other evidence that after the collision plaintiff was entirely unconscious and limp; that he was bleeding from "other" parts of his head; that he had lacerations on the back of his head, where two or three teaspoonfuls of blood were observed; that he "seemed to be . . . in a very bad condition"; that he would not respond to questions; that he could not get up by himself, but had to be helped; and that another ambulance came and took him away.

Prior to August 17, 1941, plaintiff was a strong, healthy, able-bodied man and had never been sick, but, when he reached the hospital on that day, he had a fissured skull fracture involving the left temporal parietal region, with subarachnoid hemorrhages. The fracture which "more or less" resembled a line, extended down between the ear and the eye socket on the left side of the skull. There was no visible evidence of this skull fracture and it was not discovered upon an examination of the skull, but from X-ray pictures taken the next day. The examination, on date of entry, while not disclosing the fracture, did disclose "an area of calcification outside of the skull on

the left periparietal region.'' The hospital records further show that, on admission, plaintiff's face was covered with blood, ''apparently from nose and mouth''; that his head was bandaged, but bleeding through the bandages; that on the same day he developed ''flaccid facial paralysis''; that he had a ''blood bulging left (ear) drum''; that he moved his left leg much less than the right; and that he had scratched areas on his hands and knees. The hospital records show that stitches were taken in plaintiff's forehead on the day following his admission to the hospital and, according to plaintiff, he had ''spots of bruise'' all over his body. Plaintiff did not become fully conscious and rational for almost a week after he entered the hospital.

In his claim, filed with the Workmen's Compensation Commission, plaintiff did not attempt to separate the injuries received when he ''was struck on the head by a robber'' from those received when ''the ambulance was struck by a northbound street car . . . and the cot on which ▊▊ employee was laying slid out of said ambulance and against the curb and employee was thrown off the cot.'' The claim listed the injured parts of plaintiff's body as ''head, knees, shoulders, and entire body,'' and gave the nature of his injuries as ''pressure on the brain as the result of skull fracture, inability to walk, headaches, scars on body, deafness in the right ear, nervousness, sleeplessness, injured back, knees and shoulders.''

In April 1943, an examination of plaintiff disclosed a perforation of his left ear drum, apparently little vision in the left eye and weakness of the left arm and left leg. At the time of the trial, November 15, 1943, plaintiff was still suffering with pain, headaches and dizziness, and was deaf in the left ear. He walked with difficulty, with a cane, and had a wobbly walk. He didn't talk much, his speech was very hesitant and he was 90% permanently and totally disabled.

Plaintiff's theory is that he received only ''minor injuries'' in the ''holdup scuffle,'' but was severely injured in the collision. As respondent, he insists that, ''by far the greater weight of the credible evidence of all the witnesses who saw and observed plaintiff, including the two witnesses who later became doctors, is to the effect that none of the injuries complained of came about as a result of the holdup.'' Defendant's theory is that ''there was substantial evidence that plaintiff's skull was fractured at the filling station''; that ''there was no substantial evidence that plaintiff was injured by the collision''; and that, in any case, the necessary causal connection between defendant's negligence, if any, and plaintiff's injuries was not shown with reasonable certainty, but remained in the realm of conjecture and speculation.

▊ Appellant's assignment that the court erred in refusing its demurrer to the evidence at the close of plaintiff's case must be overruled, because the error, if any, was waived when defendant refused to stand upon its request and offered evidence after the demurrer

was overruled. Evans v. Farmers Elevator Co., supra (147 S. W. (2d) 593, 594).

In support of its assignment that the court erred in refusing its demurrer at the close of all the evidence, appellant insists that there is no substantial evidence from which a jury could find that the skull fracture and resulting disability suffered by plaintiff were *caused* by the negligence, if any, of defendant in failing to yield the right of way to the emergency vehicle and keep clear of the intersection, as required by city ordinance. Appellant says that there was no proof that plaintiff's skull fracture or other injuries resulted from the collision, and that the jury was permitted to speculate as to the cause and extent of plaintiff's injuries.

Appellant relies upon the following rule of law, to wit; ''If the injury may have resulted from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result; and if the evidence leaves it to conjecture, the plaintiff must fail in his action.'' Warner v. St. Louis & Meramec R. R. Co., 178 Mo. 125, 134, 77 S. W. 67, 70; State ex rel. Trading Post Co. v. Shain, 342 Mo. 588, 593, 116 S. W. (2d) 99, 102; Cole v. Uhlmann Grain Co., 340 Mo. 277, 100 S. W. (2d) 311, 317; Wills v. Berberich's Delivery Co., 345 Mo. 616, 134 S. W. (2d) 125, 130; Luettecke v. City of St. Louis, 346 Mo. 168, 140 S. W. (2d) 45. 50.

In determining whether the demurrer to the evidence was properly ruled, it will be unnecessary for us to determine whether there was substantial evidence that plaintiff's skull fracture, and the disabilities resulting therefrom, were caused by the alleged negligence of defendant or whether the evidence shows with reasonable certainty that plaintiff received the skull fracture at the time of the collision, and this is because there was substantial evidence that plaintiff received other actual physical injuries of a substantial nature in the collision, and such injuries were entirely sufficient to carry the case to the jury on the issue of personal injury and damage, and regardless of what the evidence shows or does not show with reference to when and where the skull fracture was received. The evidence shows that immediately after the collision plaintiff had bumps and lacerations on the back of his head which he did not have after the assault at the filling station. The evidence further shows that he had ''spots of bruise'' all over his body and, in view of the evidence concerning the collision, the jury could infer that some of this injury was received at the time of the collision. The demurrer to the evidence was properly overruled. Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S. W. (2d) 825, 832; Scheurer v. Banner Rubber Co., 227 Mo. 347, 359, 126 S. W. 1037.

Error is assigned on the refusal of defendant's instruction ''C'', as follows: ''The court instructs the jury that, if you find the

issues in favor of plaintiff, the verdict should be for nominal damages only.'' It is argued that plaintiff's ''major injury was a fractured skull''; that plaintiff's skull was fractured at the filling station; and that there was evidence that a disease from which plaintiff was suffering would produce the symptoms and disabilities of which plaintiff complained. The instruction was properly refused, since, independent of the matters mentioned, there was substantial evidence that, at the time of the collision, plaintiff did receive physical injuries of a substantial nature, which would entitle him to more than nominal damages. Herod v. St. Louis-San Francisco Ry. Co. (Mo. App.), 299 S. W. 74, 78.

■ Appellant assigns error on the giving of plaintiff's instruction 2, which is, in part, as follows: ''. . . and, if you further find that, as plaintiff was riding in said ambulance and approaching the intersection in question, a siren on said ambulance, if so, was sounding and audible so that the servant and operator of defendant's street car mentioned in evidence actually heard or, in the exercise of ordinary care, could have heard said siren sounding, if so, in time thereafter, in the exercise of ordinary care, to have immediately stopped said street car clear of the intersection in question and to have kept clear of said intersection until the ambulance passed . . .'' Appellant insists that there was no substantial evidence that, after the operator *saw* or by the exercise of ordinary care *could have seen* the ambulance approaching Main street, the street car could have been stopped before entering the intersection and so have kept said intersection clear; and that the instruction permitted the jury to find the operator negligent in failing to stop the car ''within an impossible space.'' The instruction does not submit the question of negligence in failing to stop after the operator *saw* or *could have seen* the ambulance, that is, after the street car was within 15 to 30 feet of the south line of 20th street, as shown by the evidence, but it does submit the issue of negligence in failing to stop clear of the intersection, after the approaching ambulance was within hearing distance of the street car operator, and before the street car had reached a point so close to 20th street that it could not be stopped before entering the intersection. Apparently the instruction was taken, with modifications, from the case of McEntee v. Kansas City Public Service Co. (Mo. App.), 159 S. W. (2d) 336, 342, but it was there attacked on other grounds. See, also, State ex rel. Kansas City Public Service Co. v. Shain, 350 Mo. 316, 165 S. W. (2d) 428. We think the instruction fully supported by evidence heretofore set out and that it is not erroneous on the ground assigned. The assignment is overruled.

■ Appellant assigns error on the giving of plaintiff's instruction 3, as follows: ''The court instructs the jury that, if you find from the evidence that the defendant was negligent in the operation of its street car mentioned in evidence as defined by the court in its instruc-

tion numbered 2, and, if you further find that plaintiff was injured, if so, directly by said negligence as defined in instruction numbered 2, if any, of defendant, then plaintiff is entitled to recover damages for such injuries, if so, in this action, from the defendant, notwithstanding the negligence, if any, of another, if so, may have concurred and combined with defendant's negligence, if any, to inflict injury, if so, to the plaintiff."

Appellant insists that, although there was no substantial evidence that plaintiff's skull was fractured by the collision, the instruction permitted the jury "to treat the felonious assault as a part and parcel of the collision," to charge the assault to defendant, to infer that the felonious assault by the robber concurred with and combined with the alleged negligence of the operator of the street car, and to find "that all of the injuries from the assault and from the disease were attributable to defendant." The instruction is not subject to the criticism leveled against it. It does not mention the skull fracture and, regardless of when and where plaintiff received the skull fracture, there was substantial evidence that he was injured in the collision and by defendant's negligence. We must assume that the jurors were men of ordinary intelligence and, as such, they would not construe the words, "the negligence, if any, of another," as referring to the willful and felonious act of a robber happening at a different time and place from the negligent act charged against defendant. There was evidence that the ambulance in which plaintiff was riding was being operated at a much higher speed than the street car and the ordinance relied upon by plaintiff did "not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street." Defendant concedes that no "agencies were involved except the ambulance and the street car." The instruction was not misleading. Similar instructions, but expressly mentioning the other negligent party, have been approved. Bowman v. Standard Oil Co., 350 Mo. 958, 169 S. W. (2d) 384, 387; State ex rel. Alton R. R. Co., v. Shain, 346 Mo. 681, 143 S. W. (2d) 233, 240; Gorman v. Franklin (Mo. Sup.), 117 S. W. (2d) 289, 295. The assignment is overruled.

Error is assigned on the giving of plaintiff's instructions 1, 2, 3, and 5, for the reason that no submissible case was made for a jury. No argument is made and no authorities are cited, but reference is made to other headings where the contention is made that "there was no substantial evidence that plaintiff was injured by the collision." In view of our previous ruling, the assignment is overruled.

 Appellant contends that plaintiff's counsel "laid down a softening-up barrage and made continuously improper and prejudicial arguments, appealing to the passions and prejudices of the jury." Error is assigned "on the action of the court in failing to sustain defendant's various objections and motions, objections to said

inflammatory and highly prejudicial arguments and motions to strike out and declare a mistrial on account thereof.'' The arguments, objections and motions referred to are not pointed out either in the assignment of error or under points and authorities. Appellant merely says that ''all of defendant's objections, protests, and motions were improperly overruled by the court and the case went to the jury loaded with passion and prejudice.'' No particular ruling of the trial court is referred to and nothing is presented for review. Nevins v. Gilliland, 290 Mo. 293, 234 S. W. 818, 820; Jeck v. O'Meara, 343 Mo. 559, 122 S. W. (2d) 897; Scott v. Mo. Pac. R. Co., 333 Mo. 374, 62 S. W. (2d) 834, 840. The particular matters pointed out in the printed argument, show no such an abuse of the court's discretion as would justify a reversal of the cause on account of prejudicial and inflammatory argument. The assignment is overruled.

 Respondent's motion to assess a ten per cent penalty for vexatious appeal is without merit and is overruled.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.