James W. MORRIS (Plaintiff), Respondent,

v.

Dorothy ALEXANDER (Defendant), Appellant.

No. 22124.

Kansas City Court of Appeals.

Missouri.

Jan. 11, 1955.

Leon P. Embry, California, for appellant.

George H. Miller, Sedalia, Thomas G. Woolsey, Versailles, for respondent.

CAVE, Presiding Judge.

Plaintiff recovered a judgment in the sum of $4,500 for personal injuries sustained in a collision of an automobile in which he was a guest and driven by the defendant, and an automobile driven by one Eathel Adams.

Defendant appealed and assigns several grounds of error. The first is that the court erred in denying defendant's motion for a directed verdict at the close of all the evidence, because there was not sufficient evidence to make a submissible case on the ground of negligence submitted, which was that the defendant failed to drive as near to the right hand side of the highway as practicable. Determination of this assignment requires that we consider the evidence in the light most favorable to plaintiff and treat as true plaintiff's testimony and give him the benefit of all favorable inferences from all the evidence.

The collision occurred about midnight on April 15, 1950, on Highway 52, which is a 20-foot blacktop pavement with a white line indicating the center thereof. The shoulders are approximately 6 feet wide and level with the pavement. The highway runs in a generally east and west direction, and the pavement and shoulders were dry, with visibility good. Defendant and her brother-in-law were riding in the front seat and plaintiff and defendant's husband were riding in the rear seat. Defendant's automobile was eastbound and the Adams automobile was westbound. The road was straight for quite a distance west of the point of the collision; and east of the point of collision there was a curve to the right for the westbound or Adams car. As defendant approached the point of collision her left wheels were on the white center line of the pavement; her speed was 35 or 40 miles per hour; and the speed of the Adams automobile was about 40 miles per hour. Plaintiff saw the Adams automobile coming around the curve, and at that time the vehicles were 300 to 400 feet apart; plaintiff noticed the lights of the two automobiles were "overlapping"; the Adams car was on its wrong side of the center line, 1½ to 2 feet, and he told defendant she had better "pull over", that they were going to collide; she turned her car 1 or 2 feet to the right, but the right side of her car was yet 3 or 4 feet from the south edge of the pavement; the Adams car did not appear to change its course, and at the time of the collision, defendant's car was 3 or 4 feet from the south edge of the pavement. The collision occurred on the straight road west of the curve. Defendant's Ford was 5 feet 8 inches wide; and the left front corners of the automobiles collided about 1 or 2 feet south of the center of the highway. The lights of the Adams automobile were not "blinding". The ditch to the right of the shoulder was shallow, with sloping sides.

Defendant's testimony somewhat conflicts with the evidence of the plaintiff, particularly with reference to the distance she turned to her right before the collision. However, in determining whether plaintiff's

evidence made a submissible case, we must disregard all of defendant's testimony which is in conflict with plaintiff's evidence.

Plaintiff submitted his case to the jury on the hypothesis that the Adams automobile was about 1½ to 2 feet on its wrong side of the highway as the cars approached, and that defendant saw or should have seen that it would not yield one-half of the usually travelled portion of the road in time for her to avoid the collision by driving farther to her right, but that she negligently failed to do so.

 Defendant contends that she had the right to assume that the Adams car would turn to its right side in time to avoid a collision until she knew, or in the exercise of the highest degree of care should have known, that it would not do so; and until that time, she was under no duty to turn to her right. That general statement of the law is correct. McGuire v. Steel Transportation Co., 359 Mo. 1179, 225 S.W. 2d 699, 701, 702; Moore v. Middlewest Freightways, Inc., Mo., 266 S.W.2d 578, 582(2, 3). From this hypothesis, defendant argues that there is no evidence that the defendant knew at any time that Adams would not turn back to his side of the road in time to avoid a collision, or as to where defendant should have become aware that Adams would not turn back in time to avoid a collision, short of the very point beyond which he could not do so. In support of this argument, defendant cites State ex rel. Thompson v. Shain, 349 Mo. 27, 159 S.W.2d 582, 586; Paydon v. Globus, Mo., 262 S.W.2d 601, 603. Those are humanitarian cases involving the question of when imminent peril arose. However, the rule is different in a primary negligence case, because recovery can be based on antecedent negligence; that is, negligence arising prior in time to that which could be humanitarian negligence. Barnes v. Vandergrift, Mo., 269 S.W.2d 13, 16.

 The evidence most favorable to plaintiff is that defendant was driving with her left wheels on the center line; that she saw or by the exercise of the highest degree of care could have seen that the Adams car was approaching with its left wheels 1 to 2 feet on the wrong side of the center line, and that this condition was obvious when the cars were 300 to 400 feet apart; that the Adams car continued to approach in that position until the collision. Defendant was not driving as near the right hand side as practicable. Her side of the pavement was 10 feet wide and her automobile was 5 feet 8 inches wide, thus leaving 4 feet 4 inches of paved road to her right, and if the Adams car was never more than 2 feet on her side of the road, which the jury could find, this left ample space for her to pass in safety. It was her duty to act on reasonable appearances, under the circumstances, and at a time when action would be effective. The exact point at which she should have turned more to her right to avoid the collision was a question for the jury. Moore v. Middlewest Freightways, Inc., supra; Paydon v. Globus, supra; Perkins v. Terminal R. Ass'n, 340 Mo. 868, 102 S.W.2d 915, 923; Moss v. Stevens, Mo., 247 S.W.2d 782, 785; Ukman v. Hoover Motor Express Co., Mo., 269 S.W.2d 35, 37; Barnes v. Vandergrift, supra.

In the Moore case, the court was discussing a set of facts where plaintiff's and defendant's trucks were approaching each other on a paved highway and defendant's truck was partially on its wrong side of the road for a considerable distance, which was obvious to the plaintiff. The defendant contended that plaintiff was guilty of contributory negligence as a matter of law in failing to turn his truck to the right and onto the shoulder in time to avoid the collision. In disposing of this issue, the court said, 266 S.W.2d 583: "The question as to when and where plaintiff, in the exercise of the highest degree of care for his own safety, should have known that defendant's driver could not or would not return its truck to its own side was peculiarly a question for the jury." In the instant case, contributory negligence is not an issue, but we think the language is peculiarly applicable to the duty of the defendant.

However, defendant argues that she did not have time to turn further to her right; that the cars were approaching each other at a combined speed of 75 miles per hour, and taking the distance of 400 feet, as the most favorable to the plaintiff, the vehicles were approximately 4 seconds apart; that admittedly she turned 1 or 2 feet to her right before the collision; that considering the shortness of time, it would be a matter of speculation and conjecture whether she was guilty of negligence in not pulling further to the right. She cites Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495. This was a humanitarian case and the time element involved two-thirds of a second, or a second before the collision. The court properly held that there was not sufficient time after the peril arose upon which to base actionable negligence. The facts and issues in that case are in no way parallel with the facts in the instant case, and we do not consider it controlling. It was a question for the jury whether defendant had sufficient time to turn further to her right and avoid the collision.

From what we have said, it follows that the court did not err in overruling defendant's motion for a directed verdict.

Defendant's second 'and third assignments are that the court erred: (2) in denying defendant's after trial motion for judgment in accordance with her motion for a directed verdict; and (3) in giving plaintiff's instruction number 1 because there was not sufficient evidence upon which to base the instruction. What we have said necessarily disposes of these two assignments.

Because of the objections to plaintiff's instruction number 1, we deem it advisable to copy it in full, and italicize the criticized parts:

"*The court instructs the jury that under the laws of this state, it is the duty of the operator of an automobile to operate said automobile as close to the right hand side of the highway as practicable.*

"In this connection you are further instructed that if you find and believe from the evidence that on the night of April 15, 1950, the Plaintiff was riding as a guest in an automobile being driven by the Defendant in an Easterly direction on Highway No. 52; and if you further find and believe that as the automobile driven by the Defendant reached a point about one mile East of the Town of Stover, Missouri, it met an automobile being driven by one Eathel Adams; and if you further find that as said automobiles approached and met, that the automobile being driven by the said Eathel Adams extended about one and one-half to two feet to the left of the center line of the traveled portion of said highway; and if you further find and believe that as said automobiles approached and were about to meet, the Defendant either saw or by the exercise of the highest degree of care could have seen, that the automobile driven by Eathel Adams would not yield one-half of the usually traveled portion of said highway and if you further find that the Defendant either saw or by the exercise of the highest degree of care could have seen that a collision would result unless she drove her automobile as far to the right of said highway as was practicable under all the facts and circumstances then and there existing; *and if you further find and believe that Defendant either saw or should have seen the above situations to exist in time thereafter, and with safety to herself and the passengers in her automobile and to her automobile to have driven her automobile to the right and avoided a collision*; and if you further find and believe that a collision of the two automobiles would have been avoided if the Defendant had driven her automobile as far to the right of said highway as was practicable; and if you further find and believe that Defendant failed to drive her automobile as far to the right hand side of said highway as was practicable under all the facts and circumstances then and there existing; and if you further find

that such failure, if any, was negligence; and if you further find and believe that such negligence, if any, on the part of the Defendant, combined with the negligence of driver Eathel Adams (in operating his automobile with the left side thereof across the centerline of the highway), to cause a collision of the two automobiles; and if you further find and believe that Plaintiff was injured as a result of the collision of the two automobiles, then your verdict will be for the Plaintiff."

Defendant contends that the instruction is erroneous because the first paragraph is an abstract statement of the law and would likely mislead the jury into believing that defendant was under an unqualified duty to drive on her right hand shoulder of the highway. The instruction submitted negligent violation of a statute. Prefacing the submission of that issue, the instruction tells the jury that under the law of this state, it was the duty of the defendant to operate her car as close to the right hand side of the highway as practicable. Then follows a detailed recitation of the facts necessary to be found in order for the jury to find for the plaintiff on the theory that the statute was violated. It is well established that an abstract statement of law in an instruction will not require a reversal of a judgment, when it is accompanied with a further call for a finding by the jury of all the facts required by law to justify a verdict. Christman v. Reichholdt, Mo.App., 150 S.W.2d 527, 532; Richards v. Gardner, Mo.App., 193 S.W.2d 354, 357. When the instruction is read as a whole, the jury could not be mislead into believing that defendant was under an unqualified duty to drive onto the *shoulder*.

Defendant cites Davenport v. Midland Building Co., Mo.App., 245 S.W.2d 460, 467. The instruction there complained of was an instruction composed entirely of an abstract statement of law and not followed by all essential facts to be found by the jury.

Defendant also contends that the instruction is erroneous because one clause did not include the words "in the exercise of the highest degree of care". This clause reads, "and if you further find and believe that defendant either saw or should have seen the above situations to exist in time thereafter, and with safety to herself and the passengers in her automobile and to her automobile to have driven her automobile to the right and avoided a collision * * *". Defendant argues that the absence from this clause of the qualifying words, "in the exercise of the highest degree of care" imposed upon defendant a higher degree of care than the *highest degree of care*. It has been said that "There is and can be no degree of care higher than the highest." Allen v. Purvis, Mo.App., 30 S.W.2d 196, 202. We believe this criticism of the instruction is overcritical and without a sound basis. The jury might have believed that defendant was not required to use the "highest degree of care", which would be to her advantage. Considering the instruction as a whole, we think there was no prejudicial error in the respect claimed.

Defendant also contends that the instruction is prejudicially erroneous because, by using the clause, "and if you further find and believe that defendant either saw or should have seen the above situations to exist", it thereby impliedly assumed the existence of "the above situations". He cites Golden v. National Utilities Co., 356 Mo. 84, 201 S.W.2d 292, 298, and Osborn v. Chandeysson Electric Co., Mo., 248 S.W.2d 657, 664. We do not consider those cases decisive because of the difference in the issues and the instructions. Of course, instructions should not assume the existence of disputed essential facts. A reading of the instruction discloses that the jury was required to find the existence of each of the "above situations". It was not necessary to repeat the facts of the "above situations", or the words "if you so find". It is uniformly held that the subsequent assumption of a fact previously hypothesized in an instruction is not error.

Elgin v. Kroger Grocery & Baking Co., 357 Mo. 19, 206 S.W.2d 501, 508.

■ We find no prejudicial error in instruction No. 1.

It is also contended that the court erred in giving plaintiff's instruction No. 2. This instruction reads:

"The Court instructs the jury that if you find and believe from all the evidence and under the other instructions of the Court that the negligence, if any, of the Defendant Dorothy Alexander and the negligence of Eathel Adams directly concurred, combined, and contributed to cause the Plaintiff to sustain injury, then it would be your duty to return a verdict in favor of the Plaintiff and against the Defendant because if the Defendant Dorothy Alexander were negligent in any respect submitted to you in these instructions and if that negligence directly contributed to cause injury to the Plaintiff, then the Defendant Dorothy Alexander, even if less negligent than the said Eathel Adams, could not make use of the concurring negligence of the said Eathel Adams to defeat the claim of the Plaintiff against the Defendant.

"In other words, it is no defense to the Defendant that the negligence of some other person concurred with her negligence, if any, to cause injury to the Plaintiff."

Substantially this same instruction has been approved in Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243, 250, 251; Hieken v. Eichhorn, Mo.App., 159 S.W.2d 715; and Rothweiler v. St. Louis Public Service Co., Mo., 234 S.W.2d 552, 555. In the last case the court en banc approved the first and second paragraphs of the instruction, but condemned a final clause which is not included in the present instruction. That clause reads: " 'and before you can render a verdict in favor of any one defendant, you must find and believe from the evidence that said defendant *was not negligent* or *that his negligence, if any,* did not contribute to cause plaintiff's inju-ry.' " (Italics supplied.) The court held that this clause had the effect of shifting the burden of proof of negligence and should not have been included. As stated, the instruction in the instant case did not include the clause condemned in that case.

Defendant relies on Stupp v. Fred J. Swaine Mfg. Co., 229 S.W.2d 681, 684, and Greenwood v. Bridgeways, Inc., Mo. App., 243 S.W.2d 111, 115. The instruction in the Stupp case has one clause similar to a clause found in the instant instruction, but includes other issues and findings which the court held erroneous, because it was a comment on the evidence, argumentative in character, unsupported by proof, and was misleading. We think the criticized clause in that instruction and the issues submitted distinguish it from the present instruction. Furthermore, the court en banc in the Rothweiler case, which was subsequent to the Stupp case, approved the instruction now under consideration.

■ The instruction in the Greenwood case is substantially the same as plaintiff's instruction number 2. The court held that while it was not aptly phrased, *it was not prejudicially erroneous,* but since the case must be retried for other reasons, it was suggested that the instruction be rephrased to eliminate the reason for the law of concurring negligence. We agree with that suggestion. It is the function of instructions to state the law applicable to the evidence, not to explain the reason for the law. In view of the above decisions which have approved, in substance, the instruction under consideration, we are unwilling to hold that it was prejudicially erroneous.

For those interested, a simple and concise instruction on concurring negligence can be found in Neal v. Kansas City Public Service Co., 353 Mo. 779, 789, 184 S.W.2d 441.

■ Defendant's last assignment is that the judgment for $4,500 is grossly excessive. The evidence is that plaintiff was 43 years of age and followed the trade of a barber. He was riding in the rear seat of the automobile, and when he saw the collision was

impending he undertook to get down on the floor, and the collision caused his face to strike some object. He was not rendered unconscious, but was somewhat dazed, and got out of the car and sat by the roadside; his nose was bleeding; an ambulance was called and he and some of the other parties were taken to a clinic at Versailles; he received no treatment there, but someone wiped the blood from his face; he was then taken to Dr. Hume's office in Tipton, who took him to St. Joseph's Hospital in Boonville, where X-rays were taken, but which are not in evidence or referred to in any way; he remained at St. Joseph's Hospital but a short time and received no treatment there; he and Dr. Hume had breakfast in Boonville and returned to Tipton on Sunday morning following the accident, which had occurred about midnight; his left eye was swollen shut and he was suffering pain and felt sick; he opened his barber shop on Monday morning and lost no time from his work; he was never hospitalized or confined to his bed or his home as a result of the injuries. He complains that he has headaches two or three times a week, and that two or three times a month he will have nervous spells and cannot sleep well. Dr. Hume would come to his barber shop and treat his facial injuries, and on some occasions he would go to the doctor's office for treatment; this continued for about six weeks; thereafter, he received no medical attention; his left eye was badly swollen for approximately six weeks and is still weak. He received an indentation in his forehead just above the nose and over the left eye and this scar has caused him some embarrassment. Dr. Hume died before the trial and his testimony is not before us.

Dr. Gunn testified that he was a practicing physician at Versailles; that he examined plaintiff for the first time on September 30, 1953, more than three years after the accident, and found "a very obvious depression above the nose—between the eyes and above the nose"; that X-rays taken at his office revealed "a healed fracture of the frontal bones of the skull * * *; the fracture showed a residual depression of the bones. * * * In a depressed skull fracture, an area of bone of the skull is fractured around its complete circumference and pushed down in towards the brain. * * * Such injuries frequently cause headaches * * *. Q. How large an area is the skull depressed in Mr. Morris' head? A. It is approximately an inch and a half in diameter. Q. And how far into the cranial cavity does the bone protrude? A. Approximately a quarter of an inch. * * * The exterior depression is approximately a half inch." He stated that this depression was a permanent condition unless remedied by surgical treatment; "an examination of his eyes revealed some weakness of the left eye". There is no evidence or claim made that plaintiff suffered a concussion or any injury or damage to his brain or nervous system. He lost no time from his work; was not hospitalized or confined to his bed or his home; there is no evidence of any medical or hospital expense. His complaints are that he has headaches two or three times a week and once or twice a month is rather nervous and has trouble sleeping; that there is a well defined scar over his left eye and that the left eye is weak. The evidence concerning the sight of the left eye is so indefinite and uncertain that it is of little probative value. Plaintiff described its condition as "weak" and the doctor stated that an examination revealed "some weakness of the left eye". There is no testimony as to what extent it is affected or the manner in which it is affected, or whether it is permanent.

■ There is no precise formula for gauging whether or not a verdict is excessive. Each case must be considered upon its particular facts. The appellate courts have frequently stated the rules concerning the question of requiring remittiturs in cases where the verdicts were deemed excessive. We need not restate those rules, but refer to Sanders v. Illinois Central R. Co., Mo., 270 S.W.2d 731, 737 et seq., where the subject is fully discussed and many cases reviewed.

Viewing the evidence in the light most favorable to plaintiff, we are of the opinion that the verdict is excessive, and if

plaintiff will, within fifteen days, enter a remittitur in this court in the sum of $1,500, the judgment will be affirmed for $3,000 as of the date of its entry in the lower court; otherwise the judgment will be reversed and the cause remanded for a new trial.

It is so ordered.

All concur.